THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
ALEXANDER JENKINS, Appellant.

First Department, February 23, 1989

**APPEARANCES OF COUNSEL**

*Jonathan R. Walsh* of counsel *(Billie Manning* with him on the brief; *Paul T. Gentile,* attorney), for respondent.

*James A. Cohen* for appellant.

**OPINION OF THE COURT**

SMITH, J.

The pivotal question raised by this appeal concerns the retroactive application of *Batson v Kentucky* (476 US 79 [1986]) and whether at trial the defendant made a prima facie showing of purposeful discrimination by the prosecutor in her exercise of peremptory challenges to exclude potential black jurors.

By indictment filed on March 28, 1979, defendant and Ronald Johnson were charged with two counts of attempted murder, first degree, robbery in the first and second degrees, and criminal possession of a weapon. After a joint jury trial, both the defendant and codefendant were convicted of second degree robbery and were sentenced as second felony offenders to imprisonment for terms of 6½ to 13 years. Defendant is currently serving his sentence.

The procedural history of this appeal is as follows: The defendant and Ronald Johnson both filed timely notices of appeal. We reversed Johnson's conviction and remanded for a new trial based upon the cumulative effect of three errors by the trial court: (1) in denying Johnson's challenge for cause to a juror whose son was then a police officer, since the charges involved the attempted murder of a police officer and bias by this juror was implied; (2) in charging in connection with Johnson's alibi defense that "you must be satisfied as to the truth of the alibi"; and (3) in excluding photographs of a third person who had allegedly admitted complicity in the crime, in light of Johnson's claim of mistaken identification. *(People v Johnson,* 89 AD2d 506 [1st Dept 1982].) Ronald Johnson was retried, convicted and sentenced, on October 26, 1982 (Hecht, J.), as a second felony offender, to an indeterminate term of imprisonment of 6½ to 13 years.

On defendant's appeal, assigned appellate counsel filed a five-page brief in this court attacking the testimony of the People's identification witnesses. Jenkins then filed a *pro se* supplemental brief which was, in essence, the same brief filed by codefendant Johnson, but which also raised a claim of ineffective assistance of appellate counsel. This court affirmed the defendant's conviction, stating in its memorandum decision that the "cumulative effect of possible errors which required a new trial in *People v Johnson (supra)* is thus absent in the present case." *(People v Jenkins,* 91 AD2d 557 [1st Dept 1982], *lv denied* 58 NY2d 975 [1983].) Defendant's subsequent writ of habeas corpus claiming ineffective assistance of counsel was denied by the District Court for the Southern District of New York (Conner, J.) on October 24, 1986. However, the Court of Appeals for the Second Circuit reversed, with direction to issue an order granting the writ unless this court appointed appellate counsel within 90 days of its decision. *(Jenkins v Coombe,* 821 F2d 158, 161 [2d Cir 1987], *cert denied* — US —, 98 L Ed 2d 655 [1988].) The circuit court concluded that since this court had relieved the defendant's appointed counsel without replacement before submission of the appeal, the defendant was constrained to represent himself despite the clear duty to afford him adequate and effective appellate representation. We assigned appellate counsel for defendant and this appeal followed.

Defendant's primary claim is that the prosecution's use of peremptory challenges to exclude black venirepersons violated his Federal and State constitutional equal protection rights.

He also argues that the trial court's denial of challenges for cause for prospective jurors who were related to law enforcement officers deprived him of a fair trial, and that its refusal to allow evidence as to the description and photograph of Ronald Smith violated his due process rights.

■ *Batson v Kentucky (supra)* was decided in April 1986, long after this court's December 1982 decision on the defendant's appeal. In *Griffith v Kentucky,* however, the Supreme Court held that the holding in *Batson* should be "applied retroactively to all cases, state or federal, pending on direct review or not yet final" (479 US 314, 328 [1987]). Because of the procedural history of this appeal, it is clear that this case, in effect, remains on direct appeal.

In *Strauder v West Virginia* (100 US 303 [1879]), the Supreme Court held that a State violated the equal protection of the laws when it tried a black defendant before a jury from which blacks had been purposely excluded. The Supreme Court in *Batson (supra)* reexamined the evidentiary standard it had established in *Swain v Alabama* (380 US 202 [1965]) for evaluating a criminal defendant's claim that the use of peremptory challenges to exclude members of his race from a petit jury violates the equal protection of the law. It held that the *Swain* standard, which required proof that a prosecutor had systematically utilized peremptory challenges "in case after case, whatever the circumstances, whatever the crime", to exclude members of a race from the jury *(Swain v Alabama, supra,* at 223), placed a crippling burden upon defendants, thereby allowing a prosecutor's use of peremptory challenges to be largely immune from constitutional scrutiny. *(Batson v Kentucky, supra,* at 92, 93.)

The *Batson* court, overruling *Swain (supra),* announced that a defendant may establish a prima facie case of purposeful discrimination in the selection of a petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at that defendant's trial. *(Batson v Kentucky, supra,* at 96.) The Supreme Court established guidelines for determining a prima facie case of purposeful discrimination. It stated: "To establish such a [prima facie] case, the defendant first must show that he is a member of a cognizable racial group * * * and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact * * * that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a

mind to discriminate.' * * * Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the [black] veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury * * * raises the necessary inference of purposeful discrimination." *(Batson v Kentucky, supra,* at 96.)

In deciding whether the defendant has made the requisite showing the trial court must consider "all relevant circumstances", including such factors as whether a prosecutor's "pattern" of strikes against black jurors might give rise to an inference of discrimination and whether the District Attorney's voir dire statements and questions may support or refute such an inference. *(Batson v Kentucky, supra,* at 96-97.)

Once the defendant makes this prima facie showing, the burden shifts to the People to provide a "neutral explanation" for challenging blacks, which explanation need not rise to the level of justifying the exercise of a challenge for cause. However, a mere statement that the challenge was based upon intuitive judgment that the dismissed persons would be partial to a defendant because of their shared race is not adequate rebuttal. Nor is a mere denial of discriminatory motive or an affirmation of good faith in the exercise of challenges sufficient. Rather, the prosecutor must articulate a racially "neutral explanation" related to the particular case to be tried. The trial court then shall determine whether the defendant has established purposeful discrimination. *(Batson v Kentucky, supra,* at 98.)

The petitioner in *Batson* (476 US 79, *supra)* was a black man indicted for burglary. The prosecutor peremptorily challenged all four blacks on the panel and defense counsel moved to discharge the resulting all white jury on Sixth and Fourteenth Amendment grounds and requested a hearing. The defendant's motion was denied without a hearing. This issue came before the Supreme Court on Batson's appeal from his subsequent conviction.

■ Turning to the instant case, the record reveals that the defendant established a prima facie case of purposeful discrimination making it necessary for the prosecutor to come forward with a neutral explanation for the exercise of her peremptory challenges. A review of the facts makes this clear. The record reflects that there were a total of 10 blacks and approximately 37 whites and Hispanic surnamed venireper-

sons questioned by both sides during nine rounds of voir dire, resulting in the selection of 11 white jurors and 1 black. The one black juror was a Mrs. Bullard, selected in the seventh round.

During this selection process the prosecutor exercised 10 peremptory challenges. Seven of these were utilized to remove 7 of the total of 10 blacks questioned, while only 3 were used against the total of approximately 37 whites and Hispanics. The striking of most of the blacks and the disproportionate striking of blacks when compared to whites and Hispanics established a pattern of strikes against blacks. The defense counsel jointly exercised 20 challenges, 2 against blacks and 18 against those who were not black.

The two black veniremen not peremptorily challenged by the prosecutor but challenged by the defense were Joseph Knight and Bernard Butler. Mr. Knight was a part-time security guard at Shea Stadium and Madison Square Garden whose duties included restraining alleged perpetrators and turning them over to the police for formal arrest. He was interviewed in the first round. Mr. Butler, challenged in the fourth round, stated that "I have a brother who was in the law enforcement business. He is a general manager for the Court System in Nevada." He further indicated that he had "served on the grand jury for a number of years" and had "previously sat on petit (juries) in both criminal and civil actions."

The record further reflects that by the conclusion of the third round, after approximately 28 people had been questioned by both sides and 7 jurors selected, the defendant's counsel voiced his objection to the Assistant District Attorney's exercise of 3 of her 7 peremptory challenges to remove 3 of the 4 potential black jurors. The prosecutor countered that the defense had removed the one whom she had not challenged, Mr. Knight. The court noted that it would have to be established that there was a systematic exclusion of all black jurors in order for the defendant to succeed on a motion for a mistrial.

At the conclusion of the seventh round, the two defense attorneys moved for a mistrial, claiming the systematic exclusion of black venirepersons by the trial assistant in this case. In support of the motion, they noted that the three prospective jurors questioned in that round were all black and that the prosecutor had peremptorily challenged two of them,

leaving only Mrs. Bullard. Also unrefuted was the defense allegation that of a total of 10 peremptory challenges exercised by the People at that point, 7 were to exclude blacks and, moreover, that all 5 jurors in the fifth round were white and all 3 jurors in the sixth round were white but the prosecutor exercised no challenges against any of them.

Defense counsel, in support of the motion, placed on the record that the defendant, his counsel and the codefendant were black, and asserted that the population of Bronx County was at least 50% black.* Moreover, defense counsel claimed that the prosecutor most likely was aware that a prudent defense attorney would peremptorily challenge 2 of the 3 black jurors whom she had not removed since one was associated with law enforcement and the other was almost a "professional grand juror". The defense further claimed that the strategy of the prosecutor was not to remove all blacks but to retain a token number (1, 2 or 3) in order to avoid challenges for systematic exclusion.

The seven black persons challenged by the prosecutor included: Charles Richards a psychiatric aide whose wife had been a nurse; Phillip Hicks, a Con Edison employee; Mr. Adriane Falkner, a computer programmer who had served on a Grand Jury; and Mrs. Ann Zimmerman, an unemployed factory supervisor whose husband and child were employed by Krasdale [sic] Food Company. The record does not specifically identify which 3 of the remaining 6 persons peremptorily challenged by the prosecutor were also black.

The defendant's motion for a mistrial was timely and the denial thereof on the record below raises a question of law as to whether the defendant established a prima facie case of purposeful discrimination under the standard enunciated in *Batson (supra). (See also, People v Scott*, 70 NY2d 420, 423 [1987].)

The defendant had established a prima facie showing of discrimination based upon the District Attorney's use of 7 of the 10 peremptory challenges she used overall to remove blacks. The defendants, two black men, where charged with

---

* The United States Department of Commerce, Bureau of the Census, reported in the 1980 census that there were 1,168,972 people living in Bronx County, 63.7% (745,102) of whom were either black or Hispanic. Blacks constituted 29.8% (348,744) of the total population while Hispanics were 33.9% (396,353). Of the 396,353 Hispanic persons, 23,182 (an additional 2% of the total) identified themselves as Hispanic-black, and 215,961 (18.5%) as Hispanic, other races.

armed robbery of a grocery store and the attempted murder of two police officers. The appellant alleges that at least two of the People's main witnesses—the store manager and one of the police officers—were probably white. The record reveals that the seven blacks challenged by the prosecution were a heterogeneous group of both sexes with different occupations and social backgrounds. Under the circumstances, the prosecutor's pattern of strikes against black jurors gives rise to an inference of discrimination. *(People v Scott, supra,* at 425.) More specifically, there is an inference that the Assistant District Attorney challenged the seven potential jurors solely on account of their race or based upon the assumption that blacks because of their race would be unable to impartially consider the State's case against black defendants. *(Batson v Kentucky,* 476 US 79, 89 [1986], *supra.)*

The fact that the jury ultimately included one black does not negate the prima facie showing of purposeful discrimination. *(See, People v Hockett,* 121 AD2d 878, 879 [1st Dept 1986], *conviction vacated after remand* 128 AD2d 393 [1st Dept 1987] [two blacks remaining on the jury]; *cf., Batson v Kentucky, supra,* at 105 [concurring opn of Marshall, J.].)

Similarly, the defense arguments that the prosecutor anticipated that the defense would challenge the two black jurors who were connected with law enforcement and who had Grand Jury experience, and intended that a token number of blacks be on the jury are "relevant circumstances" to be considered which may "give rise to an inference of discrimination." *(See, Batson v Kentucky, supra,* at 96-97.)

The prosecutor argues that if the trial assistant decided not to challenge Mr. Knight or Mr. Butler because of connection with law enforcement and service on a Grand Jury, then factors other than race influenced the assistant's use of peremptory challenges and thus, the defendant cannot claim that race was the sole concern in exercising the prosecutor's challenges against blacks. However, the critical inquiry is not whether race was the prosecutor's sole motive in exercising peremptory challenges but whether challenges were exercised in a purposefully discriminatory manner. A prima facie case of discrimination was established by the exercise of 7 out of 10 peremptory challenges against blacks who comprised only 10 of the 47 people questioned. *(Cf., People v James,* 132 AD2d 932 [4th Dept 1987].) Thus, the burden shifted to the prosecutor to come forward with a neutral explanation for challenging black jurors.

Several cases decided since *Batson (supra)* lend support to the conclusion that a prima facie case was established by the defense here. In *Griffith v Kentucky* (479 US 314, *supra),* the prosecution used 4 of its 5 challenges to strike blacks from the jury while the defense used 8 of 9 to strike prospective white jurors. No black person served on the jury. The Supreme Court vacated the judgment and remanded the case for further proceedings. In *People v Hockett (supra),* this court held an appeal in abeyance and remanded the case for a hearing on the prosecutor's exercise of his peremptory challenges where he had used 12 of his 17 peremptory challenges to strike prospective black jurors. In *People v Howard* (128 AD2d 804, 805 [2d Dept 1987]), where a prosecutor had used peremptory challenges to strike the only two blacks on the jury venire, the Second Department ruled that the defendant "made out a prima facie case of racial discrimination and the court should have required the prosecutor to articulate the reasons for challenging the two black veniremen" and remanded the case for a hearing.

■ Under different circumstances this matter should be remitted for a hearing in order to provide the People with an opportunity to explain their pattern of strikes again black members of the venire. *(See, Batson v Kentucky, supra; People v James, supra; People v Hockett, supra; People v Lawson,* 136 AD2d 929 [4th Dept 1988], *lv dismissed* 70 NY2d 1007 [1988].)

However, in view of the lapse of some nine years since the trial and the improbability of reconstructing the voir dire, especially in light of the limited record, the judgment of conviction should be vacated and a new trial ordered. *(See, People v Scott, supra.)*

Accordingly, judgment, Supreme Court, Bronx County (Howard Goldfluss, J.), rendered December 3, 1979, should be reversed, on the law, and a new trial ordered.

SULLIVAN, J. (dissenting). Under *Batson v Kentucky* (476 US 79), the burden of establishing that they have not discriminated shifts to the People only after the defendant, "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose", establishes a prima facie case of purposeful discrimination. *(Supra,* at 94, citing *Washington v Davis,* 426 US 229, 239-242.) Such a showing has not been made here. Defendant, who, along with his codefendant, exercised 19 peremptory challenges to exclude 15 white potential jurors and only 2 blacks, complains that after the exercise

of the People's peremptory strikes the potential jury was only 25% black in a county that was, according to the 1980 census, about 30% black. This is hardly a disproportionate ratio, even if the measurement to be applied is whether a jury is composed of the races in proportion to their ratio to the general population. Noteworthy also is that, having failed to make a prima facie showing of purposeful discrimination, defendant in his argument, both here and at nisi prius, inflated the purported percentage of blacks in Bronx County to be at least 50%, without offering any empirical data to support his contention. While a defendant obviously need not establish that all blacks were excluded before he can be said to have made a prima facie showing, he does not meet his burden by drawing an inference based on faulty statistics.

The People did not challenge 3 of the 10 blacks who constituted the original venire. Thus, defendant exercised his peremptory challenges on a higher percentage of whites than the People used to exclude blacks. In any event, leaving the potential jury with 25% of its panel members black (before defendant exercised his peremptory challenges) belies the statistical argument that the blacks challenged were purposefully excluded solely for reasons of race. Thus, I would affirm the judgment.

Even if the majority were correct in concluding that defendant made out a prima facie showing of discriminatory purpose, the People were not given the opportunity to articulate a neutral explanation for their exclusion of the challenged jurors. Under *Batson,* the People are entitled to this opportunity, and further proceedings are thus required before a reversal is dictated. *(Supra,* 476 US, at 100; *see also, People v Hockett,* 121 AD2d 878.) The majority summarily disposes of this requirement by noting that nine years have elapsed since the trial, and conjecturing about the improbability of reconstructing the voir dire. This is unfair to the People, particularly since, at the time defendant first raised the issue during the voir dire, they sought the opportunity to explain their challenges, stating, "Judge, if Mr. Bornstein would like me to go to the qualifications of each of the other jurors, I would go through them at this time." The court did not afford the People the opportunity because it summarily rejected defendant's argument. Perhaps the Assistant District Attorney, or at least her notes, are available for examination as to the reasons underlying the peremptory challenges.

Finally, the lapse of time since the 1979 trial, rather than

militate against, weighs heavily in favor of affording the People an opportunity to be heard. The underlying crime is a very serious one. The proof of guilt was overwhelming. In view of the nine-year lapse, it is possible that some or all of the People's witnesses would not be available, and even if they were, their ability to identify defendant might be significantly impaired.

Ross, J. (concurring in part and dissenting in part). I concur in part with the majority, and in part with the dissent, however, I would hold the appeal in abeyance and remand for a hearing with reference to "the totality of the relevant facts" and whether or not the relevant facts give "rise to an inference of discriminatory purpose" *(Batson v Kentucky,* 476 US 79, 94 [1986]).

KUPFERMAN, J. P., and CARRO, J., concur with SMITH, J.; SULLIVAN, J., dissents in a separate opinion; Ross, J., concurs in part and dissents in part in a separate opinion.

Judgment, Supreme Court, Bronx County, rendered December 3, 1979, reversed, on the law, and a new trial ordered.