OPINION OF THE COURT
John Carey, J.
Rarely if ever has a court, during jury selection, disallowed a peremptory challenge already made, in order to prevent its use for racial discrimination. This is such a case.
*840 BACKGROUND AND FINDINGS OF FACT
Defendant, a white male, is charged with attempted murder in the second degree, assault in the first degree (three counts), robbery in the first degree (two counts) and grand larceny in the fourth degree, all against a black male, as well as criminal possession of a weapon in the third degree. Defense counsel asked several prospective jurors whether they would agree that a person, male or female, subjected to unwanted forcible sexual advances, might react strongly. Counsel also asked several panel members if they believed in a right of self-defense. In that context a novel Batson[1] issue arose on May 5, 1989, requiring immediate decision by the court. Fortunately the weekend of May 6 through 7 has provided time for research, analysis and reflection.
A panel of 40 prospective jurors was provided on May 4th. Five of them were excused on consent following private discussions with the court and counsel in defendant’s presence. After questioning on voir dire one more was excused on consent and another for cause. That left 33 on the panel, including only three black members, all of whom were peremptorily challenged by defendant without any showing that the ethnicity they share with the alleged victim would mar their impartiality.
The first black juror challenged, referred to here as No. 1, had requested a private discussion, at which she expressed concern about being sequestered, being a single parent with an 11-year-old child. She said another adult lives in the same home but gets home from work late. She was in the first group chosen by lot to sit in the jury box for voir dire, during which neither sequestration arrangements nor any other subject was explored in significant depth with her. She was excused along with nine white jurors who were challenged peremptorily from among the first group.
The second and third black jurors (No. 2 and No. 3) peremptorily challenged were in the second group chosen for questioning. They were not excused when court was adjourned at *841 the end of the day on May 5th. Nor were any of the peremptorily challenged white jurors from the second group excused that day. After No. 3 was challenged, the court, joined by the prosecutor, declared the existence of a Batson situation. The court here confirms its having found a prima facie case of purposeful discrimination in the exercise of peremptory challenges by the defense.[2] It therefore became the burden of the defense to show racially neutral and nonpretextual reasons for the challenges.
Following a private exchange of views with both lawyers in defendant’s presence, the court called upon defense counsel for explanations of his grounds for peremptorily challenging No. 2 and No. 3. Number 2, also a woman, had described herself at the beginning of voir dire as a Yonkers resident who works at Ciba-Geigy, with a high school education, whose husband is in the moving business, with three children (ages 21, 17 and 9), a 17-year Westchester resident living in a rented home, doing volunteer work at her church and at a school, and who likes to sew and travel. She was not extensively questioned by either the prosecutor or defense counsel, who gave as reasons for his challenge that the brevity of her answers showed her to be passive, docile and not interested in being a juror.
Number 3, a man, had sought a private meeting to tell how he had been a crime victim four times and how, as a 13-year part-time ambulance volunteer working with law enforcement personnel, he might give more credence to a police witness than to a civilian, but would try to keep an open mind. On voir dire, he also mentioned his and his wife’s jobs, his high school education, his six-year-old son, 37-year residence in Westchester and his emergency medical treatment training. When defense counsel reopened the matter of the relative credibility of police and civilians, No. 3 stated clearly that he would scrutinize a police witness the same as any other. Defense counsel explained his peremptory challenge of No. 3 on the ground that his privately expressed views on police credibility were more to be believed since No. 3 must have been under peer pressure when answering in the presence of his fellow jurors. No effort had been made by the defense *842 during voir dire to explore the difference between No. 3’s initial and later expressed views.
The court concluded the discussion with counsel on May 5 by reserving decision on the sufficiency of the defense explanations under Batson v Kentucky (476 US 79) and its progeny and on what steps the court would take if not satisfied with those explanations. After much study, the court has concluded that the explanation as to No. 2, while racially neutral, was pretextual, and her challenge is disallowed. She will be seated as the ninth sworn juror when the second group of prospective jurors is returned to the courtroom this morning.
The third challenge, which would have eliminated the last of the three black persons from the jury but for the court’s present action as to No. 2, while not constituting "cause”,[3] is found to be racially neutral and nonpretextual, and it will stand unless the defense concludes that it should be withdrawn, in which case No. 3 will become the 10th sworn juror. It would be ideal if there were equal numbers of black and white jurors, given what the court has heard on voir dire about the facts of this case. For there to be no black jurors would be shameful to say the least, especially if the defendant were responsible. One black juror is far from sufficient but better than none, and two would be better yet, but whether this jury will have 1 or 2 black jurors is for the defense to decide, and that forthwith.
CONCLUSIONS OF LAW
1) STATE ACTION, IF REQUIRED FOR BATSON TO APPLY, IS PRESENT.
With great respect to the views of Justice Peter Rosato, who wrote at length on Batson issues in Holtzman v Supreme Ct. (139 Misc 2d 109 [Sup Ct, Westchester County 1988]), this court differs on two points. First, State action appears not to be required in New York in order for Batson (supra) to apply to defense challenges, since article I, § 11 of the NY Constitution goes beyond the Federal prohibition against racial discrimination when it forbids "discrimination * * * by any other person or by any firm, corporation, or institution” (People v Muriale, 138 Misc 2d 1056 [Sup Ct, Kings County *843 1988]; People v Gary M., 138 Misc 2d 1081 [Sup Ct, Kings County 1988]; People v Davis, 142 Misc 2d 881 [Sup Ct, Bronx County 1988]).[4]
The second point on which this court differs with Justice Rosato is on whether State action occurs upon defense counsel’s exercise of peremptory challenges. He expressed "the view * * * that the State cannot be held responsible for the conduct complained of merely because the Judges are required to grant the peremptory challenge once it is exercised.” (Holtzman v Supreme Ct., supra, 139 Misc 2d, at 118.) That might be so if indeed the court were required to carry out a racially discriminatory challenge. If, however, the court has any authority to disallow such a challenge, then it’s not doing so must be an instance of State action. Even without such authority, the appearance of State action would exist. "If the court remained silent in the face of evidence of discrimination the only conclusion that could be drawn is that the court agrees or condones such actions. A court cannot sit idly by when in open court a request is made to discriminate against a private citizen. The court’s granting of such a motion could only be viewed as judicial discrimination. The court will not be put in a position where it can be viewed as having accepted discrimination.” (People v Gary M., supra, 138 Misc 2d, at 1096.) Equally persuasive is the following from Muriale (supra, 138 Misc 2d, at 1062-1063): "Then in open court the Judge or clerk orders the excluded jurors to leave, and they are guided out of the room by uniformed court officers or Deputy Sheriffs. The jurors perceive the Judge as the person who is responsible for the conduct of the trial, and although they do not know whether the prosecutor, the defense lawyer, or the Judge is rejecting them, they do know that officials of the State are telling them to leave.” And Davis (supra, 142 Misc 2d, at 887-888) put it in this fashion: "The implementation of racially discriminatory defense peremptory challenges constitutes State action, not because the defense attorneys are paid by the State pursuant to County Law article 18-B, but rather, because the Trial Judge and other State officials must participate, facilitate and acquiesce in the racial discrimination.” Justice Rosato might well have viewed the court’s participation differently if he had been on the firing line in an actual *844 trial rather than having been asked to rule in the abstract. This court is on the firing line, and will not participate, even to the limited extent of acquiescing, in a racially discriminatory peremptory challenge. It should be emphasized that, in addition to the deprivation of a juror’s right to serve without being improperly excluded: "The State as representative of the community has standing to complain about an injury to the community, to the jury system and to the law as an institution.” (People v Gary M., supra, 138 Misc 2d, at 1091.)
2) THE COURT MAY AND SHOULD DISALLOW INVALID CHALLENGES.
The Supreme Court in Batson (supra) explicitly contemplated its possible approval in subsequent rulings of the disallowance of challenges already made as an alternative remedy to discharging an entire panel, including jurors already sworn. (See, quotation in n 1, supra.) The facts of this case call for disallowance.
Parts of two court days have already been consumed in jury selection, with 4 jurors sworn and 4 more selected preceding black juror No. 2. Discharging the whole panel would mean that the time of approximately 3 dozen jury panel members, 2 lawyers, 1 court reporter, several court officers and 1 Judge would have been wasted. This is not necessary.
The damage that would otherwise have been done by eliminating all three black jurors can be avoided by disallowing the challenge to No. 2 and encouraging the defense to reconsider as to No. 3. Then jury selection can be finished and the trial proper begun.
CONCLUSION
Accordingly it is ordered that the peremptory challenge to the second black jury panel member is disallowed while the challenge to the third and last black member may stand if defense counsel, after reconsideration, so determines.

. (Batson v Kentucky, 476 US 79 [1986].) The Supreme Court "express[ed] no view on whether it is more appropriate in a particular case, upon a finding of discrimination against black jurors, for the trial court to discharge the venire and select a new jury from a panel not previously associated with the case * * * or to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated” (476 US, at 100, n 24).

. The court recognizes the possibility that defense counsel, for whom the court has the highest regard, may, in challenging all three black panel members, be in the difficult position of being instructed by his client to take actions that he would not even contemplate if solely in charge of the defense.

. "Preservation of the distinctive character of the peremptory challenges requires that the non-moving party need not show a reason rising to the level of cause for excusing the prospective jurors in order to rebut the moving party’s prima facie case.” (Booker v Jabe, 775 F2d 762, 773 [6th Cir 1985].)

. No Appellate Division case has been found dealing with Batson challenges by the defense, only by the prosecution. (People v Mack, 143 AD2d 280 [2d Dept 1988]; People v Miller, 144 AD2d 94 [3d Dept 1989]; People v Jenkins, 145 AD2d 225 [1st Dept 1989].)