OPINION OF THE COURT
Edward H. Lehner, J.
During jury selection the six codefendants have used their peremptory challenges to excuse all nine minority venirepersons (six black[1] and three Latino) who have to date been examined. Plaintiffs assert that this exclusion has been impermissibly based on race and request judicial relief.
FACTS
The plaintiff Joseph Siriano, a white of Italian ancestry, asserts that he was injured in a construction accident and has instituted this action against the owner of premises where the accident occurred and five contractors and subcontractors.
Justice Helen Freedman granted each defendant three peremptory challenges and gave plaintiffs nine challenges. As of March 16, when an application was made to me, two jurors (both white) had been seated. Plaintiffs had exercised five challenges (four white and one black) while defendants jointly exercised 11 challenges (the nine referred to above as well as two whites). In addition the parties jointly excused approximately 180 prospective jurors, the vast majority of whom were apparently excused due to problems resulting from the stated length of the trial. No breakdown of the racial composition of these persons was available.
In the afternoon of March 16, plaintiffs’ counsel complained of the actions of the defendants in excusing all of the minority jurors. After hearing argument, I determined that the statistics displayed a prima facie case of racial discrimination and directed defendants to offer race neutral explanations for their *514 challenges. On the following two afternoons I heard defendants’ explanations for the exercise of their challenges and examined, together with counsel, the three minority jurors (two black and one Latina) who were then available.
DISCUSSION
In Swain v Alabama (380 US 202 [1965]), it was held that purposeful exclusion of blacks from juries violates the Equal Protection Clause, but proof was required that the prosecutor had followed such a pattern in cases other than the one before the court. This formulation was found unworkable and was therefore rejected in Batson v Kentucky (476 US 79 [1986]), where it was held that "a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor’s exercise of peremptory challenges at the defendant’s trial” (at 96). The Court ruled that to "establish such a case, the defendant first must show that he is a member of a cognizable racial group * * * and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant’s race * * * [and that the] facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race” (at 96). As an example it was stated that a " 'pattern’ of strikes against black jurors included in the particular venire might give rise to an inference of discrimination”, and that once there is a "prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors, [and the] trial court then will have the duty to determine if the defendant has established purposeful discrimination” (at 97-98).
Although in 1993 the First Department in People v Doran (195 AD2d 364) restated the foregoing requirements, including the necessity of showing that the prosecutor removed "members of [the] defendant’s race from the panel” (at 365), it was held in Powers v Ohio (499 US 400 [1991]), that a juror has a constitutional right not to be excluded from a jury on account of race and a defendant of a different race "can raise the third-party equal protection claims of jurors excluded by the prosecution because of their race” (at 415).
Two months after the decision in Powers (supra), in Edmonson v Leesville Concrete Co. (500 US 614 [1991]), it was announced that the harms recognized in Powers are not limited *515 to the criminal sphere, and that courts must entertain a challenge to a private litigant’s racially discriminatory use of peremptory challenges in a civil trial, concluding that it would be left to the trial courts in the first instance to develop evidentiary rules for implementing the decision. Although many courts have dealt with this issue in criminal cases, there are very few decisions in the civil area, with no reported case having been located in New York.
Coming to the action at bar, the explanations for the exercise of peremptory challenges offered by defendants predominately involved concerns because the jurors, members of their family or close friends had at some time been injured in an accident (Smith, Walker, Flores, Cypher, Allen and Stubblefield). Some of the other partial explanations offered as to the following prospective jurors were: (Rosario) two young jurors had already been selected and a third young juror would not provide a desired mix; (Stubblefield) father had died at Beth Israel Hospital, a defendant herein, although no fault was ascribed by the juror to the hospital; (Guzman) three brothers were in the construction trade; (Smith) wife works in the medical records room at Presbyterian Hospital.
The three jurors who were examined by counsel and the court (Smith, Walker and Guzman) appeared to be sensible, intelligent persons, who all stated that they could and would fairly try the action, for which promise I could see no valid reason to question.
After having heard from the aforesaid three jurors and the submissions and arguments of counsel, I now have to decide whether to deprive defendants of their exercised peremptory challenges granted by CPLR 4109, which challenges normally permit a party to excuse a juror without offering a reason. Such challenges are not constitutionally protected fundamental rights, but rather are State-created means of achieving an impartial jury (Georgia v McCollum, 505 US —, 112 S Ct 2348 [1992]). The determination of this issue, as indicated above, depends on whether these defendants have exercised their challenges in a purposefully discriminatory manner. The question poses great difficulty for a Trial Judge. As noted by Judge Bellacosa in his concurring opinion (on behalf of Chief Judge Wachtler and Judge Titone) in People v Bolling (79 NY2d 317 [1992]), "[analytically, peremptories and race-neutral articulations present a quintessential and untenable dualism” (at 326). In that opinion the three Judges urged, as did Justice Marshall in his concurring opinion in Batson (supra), the *516 elimination of the peremptory challenge process, stating that it now produces "a seemingly endless variety of issues and permutations, manifesting the intractable struggle of the lower courts to implement the unmanageable and self-contradictory Batson remedy, [and that it] has become virtually impossible for appellate courts or trial courts to discern proper gradations and variations and to provide meaningful procedural guidance guaranteeing some measure of consistent application” (at 329).
In deciding the present issue, I must observe that I am aware of a general perception of lawyers involved in the personal injury field of a preference of plaintiffs counsel for minority jurors and an opposite preference of defense counsel. These preferences are, of course, not true of all counsel, nor in all situations. But this general perception is reflected in the numerous venue motions wherein plaintiffs seek a trial in Bronx County (where there is more likely to be a minority jury), whereas defendants are likely to oppose such a trial location.
Although I do not in any manner doubt that the attorneys for the defendants in asserting the challenges aforesaid believed that they were acting in the best interests of their respective clients and were not intentionally racist, the impact of their actions, resulting in the elimination to date of all minority jurors, has had a discriminatory impact. As noted in Batson, "[circumstantial evidence of invidious intent may include proof of disproportionate impact * * * [and that] under some circumstances proof of discriminatory impact 'may for all practical purposes demonstrate unconstitutionality because in various circumstances the discrimination is very difficult to explain on nonracial grounds’ ” (476 US 79, 93, supra).
Just as it is impermissible to eliminate blacks from a jury "on the assumption that they will be biased in a particular case simply because the defendant is black” (Batson v Kentucky, supra, at 97), it is improper to exclude them from a jury because of a general perception that it is likely that they may be more sympathetic to an injured plaintiff.
In view of all of the evidence before me, I find that there has been a purposeful discrimination against the minority jurors excused and I therefore direct that to the extent that *517 they are still available,[2] the three examined jurors (Smith, Walker and Guzman) be seated together with the two jurors previously selected, and that jury selection continue. (See, People v Frye, 191 AD2d 581 [2d Dept 1993], where the Court permitted the retention of jurors seated prior to the day the discriminatory pattern was revealed; People v Mitchell, 80 NY2d 519, 530 [1992], where it was held that a Batson claim was sustained because "the exclusion of even a single juror on racial grounds is constitutionally forbidden”.)
[Portions of opinion omitted for purposes of publication.]

. Some of the defendants have questioned whether one of these six persons (Juliette Cullell) asserted by plaintiff to be black is in fact black.

. One of the examined jurors (Smith) indicated that he may be entering the hospital this week.