659 A.2d 361

**Anzelo JONES aka Angelo Jones**

v.

**STATE of Maryland.**

**No. 1492, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

June 6, 1995.

258

Shannon E. Avery, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief) Baltimore, for appellant.

Annabelle L. Lisic, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen.) Baltimore, for appellee.

Submitted to BISHOP, ALPERT and BLOOM, JJ.

ALPERT, Judge.

At the centerpiece of this appeal is an issue never before addressed by a Maryland appellate court: what action should be taken by a trial court when a violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), has occurred?

On October 7, 1993, Officer Kevin Turner of the Baltimore City Police Department received a tip from a confidential informant that a black male dressed in a black hat, a black, purple and green sweatsuit, black pants, and Fila tennis shoes was selling drugs in the area of Fayette and Monroe streets in Baltimore City. This informant was registered with the Police Department and had supplied reliable information in the past. Officer Turner, in plain clothes, responded to Fayette and Monroe streets and began conducting covert surveillance of the area from his unmarked vehicle. While there, he observed several persons approach a juvenile, later identified as Tyrice Hawkins, and give him cash. Hawkins, in turn, gave this money to a man, who fit the description given to Turner by the informant. Turner then observed Hawkins walk across

the street, retrieve glass vials of a white substance from an alley, and give the vials to the persons who had given him money.

After observing two or three such transactions take place, Turner went to the police station and returned approximately five minutes later with two uniformed officers. Hawkins and appellant (the man earlier observed by Turner) were placed under arrest. The police found one hundred and fifty five dollars in appellant's possession. A brown bag containing twelve vials of cocaine was recovered from the alley. Appellant was charged with use of a minor to distribute cocaine, possession of cocaine with intent to distribute, possession of cocaine, conspiracy to distribute cocaine, conspiracy to possess cocaine with intent to distribute, and conspiracy to possess cocaine.

Prior to trial, appellant's attorney moved to suppress the money that was recovered from appellant. Defense counsel also requested that the identity of the confidential informant be disclosed, invoking the exception to the non-disclosure privilege which permits release of the informant's identity when the identity of the suspect is at issue. Appellant's attorney argued to the court that although appellant was wearing clothing similar to that described by the informant, he was not the individual who the informant saw selling drugs. The trial court refused to permit disclosure of the informant's identity and denied appellant's motion. Appellant was convicted by a Baltimore City jury (Ross, J., presiding) on all charges and was sentenced to fourteen years imprisonment. In this appeal, appellant presents the following three questions for our review:

I. Did the trial court err in refusing to hold an *in camera* hearing on the issue of whether to order disclosure of the confidential informant?

II. Did the trial court err in ruling that *Batson* was violated by defense counsel when striking five white persons from the jury panel?

III.  Did the trial court err in reseating the stricken jurors?

## I.  Disclosure of Informant's Identity

Appellant argues first that the trial court erred in refusing to permit disclosure of the confidential informant's identity and refusing to at least hold an *in camera* hearing on the matter.

Relying on the Supreme Court's decision in *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Court of Appeals has adopted a balancing test for determining whether disclosure of an informant's identity is warranted in a particular case. *Warrick v. State*, 326 Md. 696, 699–700, 607 A.2d 24 (1992).  This test balances the State's interest in maintaining the anonymity of its informers against the due process and confrontation rights of the accused. *Id.*

As the Supreme Court has instructed, in applying this test, the trial court must look to "the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro*, 353 U.S. at 62, 77 S.Ct. at 628.  A "key element" is "the materiality of the informer's testimony to the determination of the accused's guilt or innocence...." *Warrick*, 326 Md. at 701, 607 A.2d 24. Stated differently, disclosure of an informant's identity may be permitted "whenever the informer was an *integral part* of the illegal transaction." *McCoy v. State*, 216 Md. 332, 337, 140 A.2d 689, *cert. denied, McCoy v. Pepersack*, 358 U.S. 853, 79 S.Ct. 82, 3 L.Ed.2d 87 (1958) (emphasis added).

It has been held, for instance, that an informant's identity should be disclosed when the informant introduced the police to the suspect, was present during a drug buy, or otherwise played an active role in the transaction. *See Roviaro*, 353 U.S. at 64–65, 77 S.Ct. at 629–30 (informant participated in undercover buy); *Warrick*, 326 Md. at 705–06, 607 A.2d 24 (informant introduced undercover police officer to drug dealer); *Brooks v. State*, 320 Md. 516, 519, 578 A.2d 783 (1990)

(informant introduced seller of cocaine to officers and was present during entire transaction). In these instances, the informant's ability to identify the suspect "may be relevant and helpful to the defense or essential to a fair determination of the case." *Warrick*, 326 Md. at 706, 607 A.2d 24.

The Court of Appeals has cautioned, however, that the particular role played by the informant in apprehending the defendant is not necessarily dispositive of whether or not the privilege of non-disclosure applies. *Gibson v. State*, 331 Md. 16, 23, 626 A.2d 44 (1993); *Brooks*, 320 Md. at 525, 578 A.2d 783 (holding that "trial courts must apply the *Roviaro* balancing test in each case, regardless of the labels attached to the informer's role"). On the other hand, there are some "more rudimentary" cases where the informant's testimony clearly has such limited relevance that disclosure of the informant's identity would be of no appreciable help to the defendant and would be outweighed by the State's interest in maintaining the confidentiality of its informants.

In *Brooks*, 320 Md. at 525, 578 A.2d 783, the Court of Appeals explained:

Clearly, the practical application of the balancing test is more rudimentary in some cases. For example, we recognize that the privilege ordinarily applies where the informer is a mere 'tipster,' who supplies a lead to law enforcement officers but is not present at the crime, while disclosure is usually required when the informer is a participant in the actual crime.

(citations omitted).

▮ This case presents the classic example of the informant as a mere "tipster." Officer Turner received a telephone call from the informant notifying him that someone wearing a black hat, a black, purple, and green sweatsuit, black pants, and Fila tennis shoes was selling drugs in a specified area. Turner responded to the scene within one-half hour and saw an individual matching this description selling drugs. The informant did not accompany Turner to the scene and did not witness the drug sales; he was, therefore, a mere "tipster."

Moreover, whether the informant identified appellant as the individual he had seen earlier selling drugs in the same area is irrelevant; the fact remains that Officer Turner himself witnessed appellant doing so. We agree with the trial court's rationale in refusing to permit disclosure of the informant's identity:

I think the record before this Court is abundantly clear that the issue raised by the Defendant is whether or not the person arrested is the person whom the witnesses saw on the day the offense was committed and the informant was not there. The informant is not an eyewitness to anything on the day of the crime. So that the fact finder in this case, with respect to anything—and even if we assume, even if we assume for the purposes of the Court's ruling on this issue that the informant informed on a totally different person, it is not this Defendant that he informed on[,] [i]t is irrelevant because the testimony is that the Defendant was seen committing the crime and the person who saw the crime committed arrested him on the same day. The fact that the informant may have had someone else in mind would be a red herring in the factual context we have in this case.

Still, appellant maintains that the record is unclear as to exactly what role the informant played in the transaction and that an *in camera* hearing on the matter should have been held. Contrary to appellant's assertions, however, there was clearly testimony at the suppression hearing clearly revealed that the informant's involvement in apprehending appellant was limited to the telephone call he or she made to Officer Turner.

Q  Officer Turner, at the time you were there making your observations, was your CI present on that particular block?

A  No, sir.

Q  And you received that information from the CI, were you on the phone with him or back at the station or—

A  In my office on the telephone.

Q  Back at Western District?

A  Yes, sir.

Q   Did he accompany you at all back to that scene?

A   No, sir.[1]

We hold, therefore, that the trial court properly refused to permit disclosure of the informant's identity. The relevance of his or her testimony is clearly limited under the facts of this case and is far outweighed by the State's interest in maintaining the anonymity of its informant. As the Supreme Court has noted, the privilege afforded the State in not disclosing its informants is particularly important "in the enforcement of . . . narcotics laws, [since] it is all but impossible to obtain evidence for prosecution save by the use of decoys. There are rarely complaining witnesses." *Lewis v. United States,* 385 U.S. 206, 210–211 n. 6, 87 S.Ct. 424, 427 n. 6, 17 L.Ed.2d 312 (1966), *reh'g denied,* 386 U.S. 939, 87 S.Ct. 951, 17 L.Ed.2d 811 (1967) (quoting Model Penal Code § 2.10, cmt., p. 16 (Tent. Draft No. 9, 1959)).

## II.   Jury Selection

During jury selection, appellant's attorney exercised four peremptory strikes of white jurors. The State objected on the basis that the strikes were discriminatory and violated the principles set forth in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In response to the court's request for the reasons why he struck the jurors, appellant's attorney explained that he did so because of the area in which the prospective jurors resided, and not because they were white. He explained that, "I don't believe that they will be able to relate to my client and his environment." The court accepted counsel's explanation and jury selection continued.

After twelve jurors and two alternates were selected, the State renewed its *Batson* challenge to the four peremptory strikes exercised by appellant's attorney, as well as a fifth

---

1. This testimony was elicited by the State during re-direct examination of Officer Turner. We question the sincerity of appellant's request for an *in camera* hearing in light of the fact that defense counsel had every opportunity at the suppression hearing to question Officer Turner regarding the extent of the informant's participation in the arrest, but failed to make any effort to do so.

strike of another white juror. The State argued that the five white jurors stricken by appellant were from the same geographical location as black members of the jury panel who *were* accepted by him. The trial judge agreed, noting that he "was stretching it before [in overruling the *Batson* challenge] in spite of the warning and the closeness of it...." The trial judge commented that, "if I would permit this to go on, we would totally undercut [*Batson*]...." The court did, however, permit appellant's attorney to repeat his reasons for striking the five white jurors. The following ensued:

THE COURT: I want you to address each one of them—

[DEFENSE COUNSEL]: Let's go through.

THE COURT: —each one of them separately and I want you to make your record and say everything you want to about them.

[DEFENSE COUNSEL]: Okay. Where are we?

THE COURT: We are starting at the top of the list. 009, Ms. Hall.

[DEFENSE COUNSEL]: 009, I explained Tonesa Hall, Vancouver Road is an area—I am not familiar with it. It places itself in zone 29. Was not struck because the person was white, was struck because of age as well. The age, that age is not close to my client's age, what I consider the age, and the location of this person, I don't believe the person will connect with my client and will be, as I see it, a peer. I struck the person for those reasons.

THE COURT: Number 10.

[DEFENSE COUNSEL]: Number 10, George Athas who is a broker. I don't think a person who is a broker is going to connect with my client and from the area in which he lives, I chose to strike him for that reason.

THE COURT: Number 16.

[DEFENSE COUNSEL]: Number 16 is a 35 year-old from zone 18. She's a customer service rep, a person again who I

don't believe is going to connect with my client or his witnesses who will testify.

\*    \*    \*    \*    \*    \*

THE COURT: Number 49....

[DEFENSE COUNSEL]: Yes. Number 49 was James Rineheart who is an accountant in zone 11 on Buena Vista Avenue. Based on my knowledge of the area, it is an area where they would not have the same type of problems that my client would encounter day to day and in his life would not connect with him. I don't believe someone who is an accountant by experience would connect with him as well.

THE COURT: Number 55.

[DEFENSE COUNSEL]: 55. John Carra who is a scientist. Again, Gilman Terrace, zone 11, which is an area that is a little—much more affluent than the area in which my client resides and who is a person—is a scientist. Look at things, in my belief, scientifically and I believe will then tend to believe the police officers merely because they're policemen. I believe those are the strikes, Judge.

The trial court found that the reasons given by defense counsel were "pure simple subterfuge" and that the real reason the jurors were stricken was solely because of their race. The court stated:

After reviewing the characteristics of the African/American members of the jury, and other members of the jury who have passed muster in this Defendant's eye, I do not find the explanations given to be justified and I again find it's a subterfuge and that the real reason those persons were struck was solely because of their race and, therefore, we will re-seat, we will re-seat all of them and then we will proceed from there.

The court invalidated each of appellant's peremptory strikes and reinstated the five white jurors to the jury panel. The court further ruled that during the re-selection process, appellant would not be permitted to strike any of the previously stricken jurors.

Appellant claims that the trial court erred in three respects during the selection of the jury. He argues that the court erred in the first instance by failing to recognize that *Batson* does not apply to the discriminatory removal of white persons from a jury panel. Second, appellant contends that he offered adequate, race-neutral reasons for striking the five white jurors. Finally, he argues that the court erred in reinstating the five jurors on the panel rather than striking the entire venire.

### A. Applicability Of *Batson* To White Persons

▉ Despite appellant's assertions to the contrary, Maryland has now joined those jurisdictions that hold that the Fourteenth Amendment is violated when a white person is struck from a jury panel solely on the basis of his or her race. *Gilchrist v. State,* 97 Md.App. 55, 75–76, 627 A.2d 44, *cert. granted,* 332 Md. 741, 633 A.2d 102 (1993); *Brashear v. State,* 90 Md.App. 709, 715, 603 A.2d 901, *cert. denied,* 327 Md. 523, 610 A.2d 796 (1992). *See also Brogden v. State,* 102 Md.App. 423, 431–32, 649 A.2d 1196 (1994). As we noted in *Gilchrist, Batson* "applies with equal force to the exercise of peremptory challenges in a manner discriminatory to blacks or whites." 97 Md.App. at 75–76, 627 A.2d 44.

### B. The Striking of Juror Numbers 9, 10, 16, 49, and 55

Appellant next challenges the trial court's ruling that juror numbers 9, 10, 16, 49, and 55 were struck by appellant solely because of their race.

The record reveals that appellant's attorney struck juror number 9 because she was from an area that he was not familiar with and because her age, 45, was not close to appellant's. He explained to the court that he did not believe juror number 9 "will connect with my client and will be, as I see it, a peer." Juror number 10 was also struck, according to appellant's attorney, because of the area in which he lived. Appellant's attorney explained that he did not believe that a broker would be able to identify with appellant. Juror number 16 was thirty-five years old and was employed as a

customer service representative. She was struck because appellant's attorney did not believe she "is going to connect with my client or his witnesses who will testify." Juror number 49 was an accountant and lived in an area "where they would not have the same type of problems that my client would encounter day to day and in his life would not connect with him. Lastly, juror number 55 was struck because he was a scientist and lived in a "much more affluent" area than that in which appellant lived. Defense counsel stated further that a scientist, he believed, would "tend to believe the police officers merely because they're policemen."

In reviewing the trial court's ruling on these strikes, we are mindful of our limited role in this regard. We "do not presume to second-guess the call by the 'umpire on the field' either by way of *de novo* fact finding or by way of independent constitutional judgment." *Bailey v. State*, 84 Md.App. 323, 328, 579 A.2d 774, *cert. denied*, 321 Md. 225, 582 A.2d 531 (1990). Instead, we must determine only if the trial court was clearly erroneous in its ruling. *Id.* at 329, 579 A.2d 774; *Aiken v. State*, 101 Md.App. 557, 563, 647 A.2d 1229 (1994). In *Bailey*, we explained:

> It is the trial judge who is in close touch with the racial mood, be it harmonious or be it tense, of the local community, either as a general proposition or with respect to a given trial of high local interest. The trial judge is positioned to observe the racial composition of the venire panel as a whole, a vital fact frequently not committed to the record and, therefore, unknowable to the reviewing court.

*Id.,* 84 Md.App. at 328, 579 A.2d 774.

■ In our view, the circumstances surrounding the exercise of peremptory strikes by defense counsel clearly support the trial court's finding that *Batson* was violated. The reasons advanced by counsel, namely, the location of the jurors' residences, were, we find, merely a pretext for excluding white jurors from the panel on the basis of their race. Appellant's attorney, for example, did not strike juror number 44, an insurance underwriter, or juror number 32, a clerk, both of

whom lived in the same zone as juror number 9, who was struck by appellant's attorney on the basis of where she lived. Moreover, while juror number 9 was struck on the basis of her age, jurors 32 and 44 were not, despite the fact that they also were several years older than appellant. Appellant's failure to strike "similarly situated" jurors supports the trial court's ruling that the race-neutral reasons advanced by him for striking the five jurors were pretextual in nature.

Also, we find it significant that counsel for appellant voiced to the court the fact that he disagreed with the principles set forth in *Batson.* At trial, the following ensued between the defense counsel and the court:

THE COURT: ... [I]f I would permit this to go on, we would totally undercut the Batson law as the Supreme Court of the United States—

[DEFENSE COUNSEL]: I don't agree with the law. I absolutely don't agree with it.

THE COURT: I understand it though.

[DEFENSE COUNSEL]: I think the Defendant has the right to have a jury of his peers. [I] [t]hink it's ridiculous. When I represent my client I try to select individuals who are going to be close to his peers, understands his situation as close as possible. I try to narrow that as well as I can knowing areas that I'm familiar with and my client is familiar with. If that is something that the courts find to be incorrect, then the Court will have to strike every panel that I'm part of because I proceed in this fashion.

This exchange apparently indicated to the trial court, and indicates to us as well, that defense counsel not only entertained doubts as to the correctness of the *Batson* decision, but also that he had at least a propensity to flout the principles set forth in that case. In *Bailey,* 84 Md.App. at 328–29, 579 A.2d 774, we explained the relevance of counsel's demeanor during the jury selection process and the importance of respecting the trial court's ability to observe that demeanor:

The trial judge is able to get the 'feel' of the opposing advocates—to watch their demeanor, to hear their intona-

tions, and to spot their frequently unspoken purposes. It is a total process in which nonverbal communication may often be far more revealing than the formal words on the type-written page.

We hold, therefore, that the trial court was not clearly erroneous in sustaining the State's *Batson* challenge to the striking of juror numbers 9, 10, 16, 49, and 55.

### C. Proper Remedy When *Batson* Violation Occurs

We next address appellant's contention that the trial court erred in reseating the five jurors after finding that defense counsel had violated *Batson.* Appellant claims that the court should have struck the entire venire instead and begun the jury selection process anew.

The issue of what action should be taken by a trial court when a *Batson* violation has occurred is one of first impression in this State. The Supreme Court has provided us with no guidance in this regard. Indeed, the Court acknowledged in *Batson* that it was leaving this issue for another day:

> In light of the variety of jury selection practices followed in our state and federal trial courts, we make no attempt to instruct these courts how best to implement our holding today. For the same reason, we express no view on wheth-er it is more appropriate in a particular case, upon a finding of discrimination against black jurors, for the trial court to discharge the venire and select a new jury from a panel not previously associated with the case, or to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire.

476 U.S. at 99, n. 24, 106 S.Ct. at 1725, n. 24 (citations omitted).

The appellate courts in other states appear to be genuinely split on this issue. Several states favor striking the entire panel upon a finding of purposeful discrimination. These states include: California (*see People v. Wheeler,* 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978); *People v. Smith,* 21 Cal.App.4th 342, 25 Cal.Rptr.2d 850 (1993)); Florida (*see*

*State v. Neil,* 457 So.2d 481 (Fla.1984); *Carter v. State,* 550 So.2d 1130 (1989), *rev'd on other grounds,* 590 So.2d 1096 (1991));[2] Indiana *(see Minniefield v. State,* 539 N.E.2d 464, 466 (Ind.1989) (implying that remedy is to strike entire jury by holding that trial court erred when it failed to grant mistrial upon prosecutor's *Batson* violation)); and North Carolina *(see State v. McCollum,* 334 N.C. 208, 433 S.E.2d 144, 159 (1993), *aff'd on other grounds,* 112 N.C.App. 390, 436 S.E.2d 163, *rev. denied,* 335 N.C. 561, 441 S.E.2d 124, *aff'd,* 339 N.C. 606, 453 S.E.2d 165 (holding that the fairer approach is to dismiss the entire panel and begin jury selection anew because "[t]o ask jurors who have been improperly excluded from a jury because of their race to then return to the jury to remain unaffected by that recent discrimination, and to render an impartial verdict without prejudice toward either the State or the defendant, would be to ask them to discharge a duty which would require near superhuman effort and which would be extremely difficult for a person possessed of any sensitivity whatsoever to carry out successfully")).

Other states permit a trial judge to reseat the improperly stricken juror and continue jury selection. These states include: Georgia *(see Ellerbee v. State,* 215 Ga.App. 312, 450 S.E.2d 443, 448 (1994)), *recons. denied,* —— S.E.2d —— (Ga. 1994); Mississippi *(see Conerly v. State,* 544 So.2d 1370, 1372 (Miss.1989) (holding that trial court was obligated to seat juror on the jury where prosecutor did not articulate a race neutral

---

**2.** It is interesting that in both California and Florida, lower appellate courts have questioned the wisdom of the highest court in holding that the entire venire panel should be stricken upon a *Batson* violation. *See Carter,* 550 So.2d at 1131, n. 1 ("We believe that a trial court should have the discretion to cure a discriminatory challenge by means other than dismissal of the entire panel. However, this court and the trial courts are bound by the clear language of *Neil,* absent directions otherwise from the Florida supreme court"); *Smith,* 21 Cal.App.4th at 346, 25 Cal.Rptr.2d 850 ("The *Wheeler* solution allows a prosecutor to push the limit and, if found to have gone too far, to have the slate wiped clean and start over with a new venire. But unless and until the United States Supreme Court mandates a contrary remedy, or the California Supreme Court changes its mind, we have no option but to follow the *Wheeler* remedy").

reason for striking her)); Missouri (*see State v. Grim,* 854 S.W.2d 403, 416 (Mo.), *cert. denied,* —— U.S. ——, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993) ("proper remedy for discriminatory use of peremptory strikes is to quash the strikes and permit those members of the venire stricken for discriminatory reasons to sit on the jury if they otherwise would"); *State v. Shelton,* 871 S.W.2d 598, 600 (Mo.Ct.App.1994)); and Wisconsin (*see State v. Walker,* 154 Wis.2d 158, 453 N.W.2d 127, 135 n. 12 (Wis.), *cert. denied,* 498 U.S. 962, 111 S.Ct. 397, 112 L.Ed.2d 406 (1990).

The Supreme Court of Missouri, in *State v. Parker,* 836 S.W.2d 930, 936 (Mo.), *cert. denied,* —— U.S. ——, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992), offered two rationales for reseating improperly stricken jurors. First, quashing the entire venire does not correct the *Batson* violation because while the parties are able to select from a new venire, the excluded jurors have still been subjected to discrimination. *Id.* Second, judicial resources are conserved by not having to go through the time and expense of selecting an entirely new venire. *Id.*

In Texas, the legislature has enacted a statute that requires trial courts to dismiss the entire jury panel and call a new array when a *Batson* violation has occurred. Tex.Code Crim. Proc.Ann. art. 35.261 (West 1989). Despite the seemingly unambiguous language of this statute, the Court of Criminal Appeals of Texas as well as the Court of Appeals of Texas have held that its terms are not mandatory and that a trial court in a given case may reinstate a wrongfully excluded juror. *State v. Bowman,* 885 S.W.2d 421, 424–25 (Tex.Crim. App.), *cert. denied,* —— U.S. ——, 115 S.Ct. 184, 130 L.Ed.2d 118 (1993); *Sims v. State,* 768 S.W.2d 863, 864 (Tex.Ct.App. 1989), *pet. dismissed,* 792 S.W.2d 81 (Tex.Crim.App.1990) (statute "does not require in all cases that a new array be called, but that the trial judge has the discretion to apply

either remedy").[3]

In New York, the appellate courts have held that the proper remedy when a juror is struck in violation of *Batson* "depend[s] upon the point in the proceedings when the issue is raised and the action taken in response thereto." *People v. Irizarry,* 165 A.D.2d 715, 560 N.Y.S.2d 279, 281 (1990). Where an objection to peremptory strikes is raised at an early stage in the selection of the jury, the appropriate remedy is to recall and reseat the stricken juror. *Id.*[4]

There are also federal court decisions indicating that an appropriate remedy upon a *Batson* violation is to reseat the stricken juror. *See United States v. Forbes,* 816 F.2d 1006, 1011 (5th Cir.1987); *United States v. Robinson,* 421 F.Supp. 467, 474 (D.Conn.1976).

As mentioned, Maryland's appellate courts have not broached this important subject. In *Stanley v. State,* 313 Md. 50, 62–63 n. 8, 542 A.2d 1267 (1988), the Court of Appeals declined to address the issue, but noted that "[w]hich remedy to apply may well be within the discretion of the trial court, depending on the circumstances of the particular case." We

---

**3.** Indeed, in a recent case, the Court of Criminal Appeals of Texas interpreted the statute as permitting the dismissal of one "array" of jurors, to which the improperly stricken juror belonged, instead of the entire venire. *Butler v. State,* 872 S.W.2d 227, 233 (Tex.Crim.App. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1115, 130 L.Ed.2d 1079 (1995). The trial court in that case had employed a voir dire procedure in which it split the venire into several separate, smaller groups or "mini-panels." *Id.*

The Court of Appeals of Texas, however, in a decision by the Tyler Circuit, held that this statute is constitutional and its provisions mandatory, rather than directory. *State v. Tunnell,* 768 S.W.2d 765, 767 (Tex.Ct.App.1989).

**4.** In addition, various trial courts in New York have issued written opinions approving the remedy of reinstating the improperly stricken juror. *Siriano v. Beth Isreal Hosp. Ctr.,* 161 Misc.2d 512, 614 N.Y.S.2d 700, 703 (N.Y.Sup.Ct.1994); *People v. Moten,* 159 Misc.2d 269, 603 N.Y.S.2d 940, 946–48 (N.Y.Sup.Ct.1993); *People v. Piermont,* 143 Misc.2d 839, 542 N.Y.S.2d 115, 118 (1989) (noting that "[d]ischarging the whole panel would mean that the time of approximately three dozen jury panel members, two lawyers, one court reporter, several court officers and one judge would have been wasted").

agree that the proper approach is to permit the trial court to determine, in its discretion, whether a wrongfully excluded juror should be stricken altogether from the venire or should be reseated. The guiding factor in this determination should be the likelihood of the juror harboring any prejudice to the violating party as a result of being improperly excluded from the panel. For example, when a *Batson* challenge is made in the jury's presence and the violating party offers his non-discriminatory reason for striking the juror in front of that juror, there is the risk that the juror will bear animosity toward the party who exercised the strike. When, on the other hand, counsel explains his reasons for striking a particular juror at a bench conference, and the circumstances otherwise do not indicate to the juror that he was struck for improper reasons, the likelihood of prejudice is not present or is minimal. The potential for prejudice is important, of course, because at risk are the rights of the parties to a fair and impartial trial.

In the instant case, appellant's attorney explained his reasons for exercising his peremptory strikes during a bench conference, and assumedly out of the ear shot of the jury. There is, as a result, no reason to believe that the jurors were aware of the reasons forwarded by him and no reason to believe they harbored any prejudice towards him as a result. We conclude, therefore, that the trial court did not err in reseating juror numbers 9, 10, 16, 49, and 55.

Our holding, we believe, is consistent with the principles underlying *Batson*, and is grounded in both pragmatic and principled concerns. If, for instance, we were to require that an entirely new venire be called every time there is a *Batson* violation, this would unfairly reward counsel for his improper conduct and give him exactly what he wanted, namely, a different jury panel. The party who has gone too far should not, as a matter of principle, be allowed to wipe the slate clean

and start anew.[5] In addition, there is the practical realization that, if we were to require the trial court to strike the entire panel in every case of discrimination, then there might be those parties who would purposefully discriminate in exercising strikes for the sole purpose of getting a new panel.[6] In the words of one commentator:

> [I]n some situations, the remedy [of discharging the entire panel] might give the prosecutor [or defense] a broader *de facto* peremptory challenge than any provided by law. A prosecutor or [defense attorney] dissatisfied with an initial panel of prospective jurors—perhaps because this panel contained an unusual number of minorities—might seek to reduce the presence of minorities through the exercise of peremptory strikes. Were these strikes upheld, the prosecutor [or defense attorney] would gain a victory; and were they declared unlawful and the jury selection process begun anew, the prosecutor might regard this defeat as a great victory still.
>
> The prosecutor [or defense attorney] would have gained not only the exclusion of the prospective jurors whom he or she wrongfully challenged but also the exclusion of all other members of the panel. The prosecutor [or defense attorney] would in effect have been afforded a power to strike the entire panel peremptorily.

Albert W. Alschuler, *The Supreme Court and the Jury: Voir Dire, Peremptory Challenges, and the Review of Jury Verdicts*, 56 U.Chi.L.Rev. 153, 178 (1989).

Also, it should not be forgotten that the exclusion of a juror on the basis of race is a violation of the juror's constitutional

---

**5.** We also recognize, however, that if the entire venire were struck, this might, under some circumstances, work to penalize the violating party, since the result might be that some of the jurors he did not strike, and very much wanted on the jury, would be dismissed.

**6.** Any skepticism of the bar, however, does not go so far as to foresee that counsel might purposefully state the reasons for his or her objection to a particular juror, whether warranted or not, in the jury's presence so that entire panel could be stricken.

rights. While a prospective juror does not have a right to sit on a particular jury, he or she does have a constitutional right under the Equal Protection Clause not to be excluded from serving on a jury on the basis of his or her race. *Powers v. Ohio,* 499 U.S. 400, 409, 111 S.Ct. 1364, 1369, 113 L.Ed.2d 411 (1991) (White, J., concurring); *Holland v. Illinois,* 493 U.S. 474, 488, 110 S.Ct. 803, 811, 107 L.Ed.2d 905 (1990). Requiring discharge of the juror in every instance would not only reward the party who has violated the Constitution but would serve to punish the juror.

The harm inflicted by a *Batson* violation is not only upon the stricken juror but also upon the community as a whole. The Supreme Court has stated that when "a court allows jurors to be excluded because of group bias, it is a willing participant in a scheme that could only undermine the very foundation of our system of justice—our citizens' confidence in it." *Georgia v. McCollum,* 505 U.S. 42, 49, 112 S.Ct. 2348, 2354, 120 L.Ed.2d 33 (1992). The Court similarly remarked in *Powers,* 499 U.S. at 407, 111 S.Ct. at 1369:

> Jury service preserves the democratic element of the law, as it guards the rights of the parties and ensures continued acceptance of the laws by all of the people. It 'affords ordinary citizens a valuable opportunity to participate in a process of government, an experience fostering, one hopes, a respect for the law.' Indeed, with the exception of voting, for most citizens the honor and privilege of jury duty is their most significant opportunity to participate in the democratic process.

(quoting *Duncan v. Louisiana,* 391 U.S. 145, 187, 88 S.Ct. 1444, 1469, 20 L.Ed.2d 491, *reh'g denied,* 392 U.S. 947, 88 S.Ct. 2270, 20 L.Ed.2d 1412 (1968) (Harlan, J., dissenting) (citations omitted)).

Stated differently, "the purpose of a *Batson* challenge is not to replace an entire panel, which would effectively deny the wrongly struck jurors their opportunity to serve, but to quash only the prejudice or wrongful strike." *Christensen v. State,* 875 S.W.2d 576, 579 (Mo.Ct.App.1994).

Lastly, we note that concerns for judicial economy support reseating the stricken juror. Starting the jury selection process over every time there is a *Batson* violation would be both burdensome and costly. The remedy of reseating the juror is a sensible, efficacious way of protecting both the rights of prospective jurors and the parties in the case.[7]

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.

---

7. Our holding does not mean, however, that if a trial court does strike an entire venire panel and begin jury selection anew, that the court has committed reversible error. If the trial court chooses such a remedy, then it must still be established that such error caused prejudice to the objecting party. Otherwise, the error is harmless. *See Jefferson v. State*, 595 So.2d 38, 40 (Fla.1992); *Aldret v. State*, 610 So.2d 1386, 1389 (Fla.Dist.Ct.App.1992).