Phillip Todd Friedman appeals from convictions of selling marijuana and trafficking in marijuana.
Friedman was charged with the unlawful sale of marijuana based on a sale that occurred on April 4, 1991, and with trafficking in marijuana, based on a purchase that occurred on June 21, 1991. The cases were consolidated for trial and the appellant thereafter was found guilty of both offenses. He was sentenced to 5 years' imprisonment on the sale conviction, which was enhanced by an additional 5-year term pursuant to § 13A-12-250, Code of Alabama 1975, and he was sentenced to 10 years' imprisonment on the trafficking conviction. He also was ordered to pay fines of $250 and $50,000 respectively, to pay victim compensation of $50 for each conviction, and to pay restitution of $70 on the sale conviction.
Evidence at trial tended to show that an undercover drug informant, who was a co-employee of the appellant, learned through a mutual acquaintance that the appellant knew where to get some marijuana. He asked the appellant to get a small amount for him, and the appellant agreed to purchase the drug. On April 4, he sold it to an undercover Alabama Bureau of Investigation agent who accompanied the informant to the site of the sale. The informant next approached the appellant with an offer to sell him approximately 3 pounds of marijuana, which was the property of the drug task force. After negotiating the price, the appellant bought the drug from undercover ABI agents on June 21.
 I.
The appellant contends that the trial court erred in consolidating his cases for trial. He argues that under Rule 13.3, A.R.Cr.P., joinder would have been improper and therefore consolidation was improper because the two offenses were not of the same or similar character, were not based on the same conduct or otherwise connected in their commission, and were not alleged to be part of a common scheme or plan.
However, according to the Committee Comments to Rule 13.3, Rule 13.3 "makes clear that offenses joined need not stem from the same transaction" and consolidation is proper where joinder would have been proper initially, "taking into consideration the factors which would require severance under Rule 13.4." The offenses in this case were similar in character, in that both transactions involved marijuana, and they were connected in their commission, because they involved an initial and a subsequent transaction in the same drug by essentially the same parties in essentially the same location. Therefore, joinder would have been proper initially.
Moreover, there is no allegation that the appellant would have been prejudiced in any way by joinder, so as to require a severance under Rule 13.4. The trial judge has the discretion to weigh the efficiency of consolidating the offenses for trial against any prejudicial *Page 52 
impact on the appellant. There is no evidence that he abused that discretion in the present case.
 II.
The appellant contends that the trial court erred in qualifying the jury outside his and his attorney's presence. However, in Joyce v. State, 605 So.2d 1243 (Ala.Cr.App. 1992), this Court held that where the defendant had an opportunity during voir dire to inquire into any potential juror's reluctance to serve, he was not prejudiced by the court's initially qualifying the jury outside his presence.
It is clear from the record that the appellant had ample opportunity during voir dire to question veniremembers. He alleges no specific prejudice but merely states that because of the way the qualification process was handled, he has been unable to supplement the record to bring in "some things that we believe occurred." Based on the record, we must conclude that the trial judge acted within his authority to "excuse or postpone the service of a prospective juror outside the presence of the parties and their counsel," pursuant to §12-16-74, Code of Alabama 1975.
 III.
The appellant contends that the trial court erred in requiring him to re-strike the jury from the same venire after his Batson motion. He cites Ex parte Branch, 526 So.2d 609
(Ala. 1987), for the proposition that the trial court should have dismissed the jury pool from which the initial jury was struck and started over with a new one following his Batson
objection.
After the trial judge found a prima facie case of discrimination, he required the State to present its reasons for striking certain black jurors. The appellant specifically challenged the reasons given for striking jurors E.J. and J.S., and the trial court thereafter granted the challenge as to E.J. and denied it as to J.S. The judge stated that he would give the parties the option of "re-strik[ing] the Jury from this panel or the State can take E.J. in lieu of one of the other jurors." The State indicated that it would substitute E.J. for juror L.H.; however, the appellant objected and the trial court then ordered the parties to re-strike the jury from the same panel, provided that the State could not exercise peremptory challenges against E.J. or any black jurors who were not initially struck. Thereafter, the judge noted for the record that in re-striking, the State had struck three black jurors, W.J., J.S., and P.G., all of whom the court had previously determined had been struck for race-neutral reasons.
Ex parte Branch, supra, states that following a Batson
challenge, an appropriate remedy may be to dismiss that jury pool and start over with a new one. However, in O'Neal v.State, 602 So.2d 462, 465 (Ala.Cr.App. 1992), this Court found no clear error "in light of the [trial] court's decision to place [the] veniremember back on the jury as a result of the prosecutor's ostensibly insufficient race-neutral explanation." Here, although the parties went through a process of "re-striking" the jury, the net effect was simply to place juror E.J. back on the panel. Although the appellant complains that "after each side knows what strikes were made by the other, [restriking from the same pool] is similar to a farse [sic]," he alleges no specific prejudice based on the method employed by the trial court. Therefore, no abuse of discretion has been shown.
The appellant also contends that there was "no neutral reason for striking any of the blacks in this case, particularly juror J.S." The prosecutor stated the following reasons for his strikes: W.J. "had a sister that had been prosecuted," J.S. was "82 years old," and P.G. "knew Leslie Salyers, who is a defense witness." Of these reasons, only that given for J.S. is suspect. Regarding the strike of J.S., the prosecutor explained that when the defense struck the last juror he had "pencilled in," he decided "at that time, to look at age." He stated that he had favorable information on all but three jurors, one of whom was J.S., "so then it became just a pick out of those three people as to who we were going to strike" and, trying to look over the jurors as briefly as he *Page 53 
could, he struck "the oldest member [he] could find."
Although the age rationale is "highly suspect" because of its susceptibility to abuse, Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), an appellant is required to show that the prosecution intentionally discriminated in its strike of a challenged juror.
 "A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. . . . unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."
Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 1866,114 L.Ed.2d 395 (1991). In the present case, the trial court found that the appellant's prima facie case was weak. The final jury was 25% black[1], drawn from a venire in which 7 of 44 members, or 16%, were black. There was no evidence of disparate treatment in the strike of juror J.S.[2] Unless it was clearly erroneous, the decision of the trial court is to be upheld. Exparte Branch, 526 So.2d 609 (Ala. 1987). In the present case, therefore, absent clear evidence of discriminatory intent, the appellant's claim must fail.
 IV.
The appellant contends that the trial court erred with regard to the issue of entrapment. He argues that there was no evidence presented of his predisposition to commit the charged offenses. Specifically, he argues he had not previously sold drugs to the informant or to anyone else, that he was not initially named by the informant as a possible drug dealer, and that, at the time the sale occurred, he was not under investigation by law enforcement authorities. He further argues that the informant had to telephone him repeatedly to get him to make the initial sale and had to reduce the price of the marijuana from $1,600 to $1,000 and agree to sell at least three pounds to get him to make the purchase on which the trafficking charge was based.
However, with regard to the appellant's initial sale to the ABI agent, the informant testified that he learned from the appellant's friends at work that the appellant might have some marijuana for sale and that he simply asked him to get him some. Although he testified that he might have telephoned the appellant as many as 50 times, he explained this testimony by adding that for many of those telephone calls the appellant was not at home and that they actually spoke only 3 times before the appellant agreed to sell him some marijuana. With regard to the appellant's purchase of marijuana, the evidence is undisputed that the appellant located a person willing to put up part of the money in order to buy the marijuana offered to him by the informant.
In order to establish an entrapment defense, a defendant must show both that the offense was induced by government agents and that he was not predisposed to commit the type of offense charged. Ruggs v. State, 601 So.2d 508 (Ala.Cr.App. 1992). " 'Even though the State, to secure evidence, is shown to have tempted the accused, yet if there is proof of his active appetite for forbidden fruit, the issue of causation is one of fact for the jury.' " Pittman v. State, 462 So.2d 791, 792
(Ala.Cr.App. 1984) (citation omitted). Here, the appellant admitted that he smoked marijuana from time to time, and that he was able relatively quickly to locate someone to sell him marijuana for re-sale. When he later was offered an opportunity to purchase a large amount of marijuana, he had a strong opinion as to how much it should cost, and he negotiated for a reduced price. He then recruited another person to obtain the money necessary to complete the purchase. From this evidence, the jury could fairly infer that the appellant was not entrapped because he was predisposed to commit the crimes with which he was charged.
The appellant additionally claims that the trial court erred in refusing to give his *Page 54 
requested jury charges on entrapment. However, where, as in this case, there is no evidence of entrapment, the issue should not be presented to the jury. Ruggs v. State, supra.
 V.
The appellant contends that the trial court erred in failing to grant his motion for a judgment of acquittal and in failing to give his jury charge on the definition of marijuana. He argues that the evidence was insufficient to show that the weight of the marijuana he purchased from the undercover agent was more than 2.2 pounds because the State's expert witness testified that he did not specifically test the marijuana to determine how much seed it contained.
Mature stalks and sterilized seeds are not within the definition of marijuana set out in § 20-2-2(15), Code ofAlabama 1975. In Ex parte Presley, 587 So.2d 1022 (Ala. 1991), the Alabama Supreme Court reversed the appellant's conviction because the State's expert, without testing fertility, weighed marijuana seeds with the other plant material and then testified that the total weight of the "marijuana" was 4.9 pounds. Similarly, in this case, the State's expert, without testing the fertility of the seeds, stated that the combined weight of the three bags of "marijuana" he had tested was 3.5 pounds.
However, the present case is distinguishable from Ex partePresley, because the expert testified on re-direct examination that, in his opinion, the total weight of the seeds in the three bags did not exceed 1.3 pounds. There was no evidence that the bags contained any mature stalks. Therefore, even if the untested seeds were infertile, the State's evidence was sufficient to establish that there was at least 2.2 pounds of marijuana in the three bags. Therefore, the trial court properly denied the appellant's motion and requested charge.
AFFIRMED.
All Judges concur.
[1] The appellant struck one black veniremember.
[2] It was undisputed that J.S. was the oldest prospective juror. The State left on the panel a juror who was 9 years younger than J.S., and the defense struck a prospective juror who was 74 or 75 years old.