JOANNA HASCHKE et al., Plaintiffs-Appellants, v. UNIFLOW MANUFAC-TURING COMPANY, Defendant-Appellee.

First District (5th Division) No. 1—93—3467

Opinion filed December 16, 1994.

Michael G. Miller, of Miller, Fanucchi & McGing, of Chicago, for appellants.

Joseph P. Postel, of Keevers & Hittle, of Chicago, for appellee.

JUSTICE McNULTY delivered the opinion of the court:

Plaintiffs Joanna and Richard Haschke brought suit against defendant Uniflow Manufacturing Co. alleging that Mrs. Haschke was injured when a door from an ice-making machine fell and struck her

on the head. The jury returned a verdict in favor of defendant. Plaintiffs appeal, claiming that the trial court erred in denying their peremptory challenge of a certain juror and that the trial court erred when it failed to declare a mistrial upon its finding of purposeful discrimination in jury selection. We affirm.

At the beginning of jury selection, the trial court informed the parties that it conducts jury selection in panels of four jurors at a time, and each party would receive five peremptory challenges. Plaintiffs' first peremptory challenge was exercised during the first panel on Mr. Duncan, a white male. Their second challenge was exercised in the second panel of jurors on Mrs. Sanders, a black female. Defendant also exercised two peremptory challenges during the first two panels of jurors.

Plaintiffs attempted to exercise their third peremptory challenge during the second panel on Mrs. Hunter, a black female. Mrs. Hunter is employed by Rush-Presbyterian Medical Center as a supervisor of clerical help in the emergency room. Mrs. Hunter brought to court with her a letter from the administrator of Rush-Presbyterian Medical Center, stating that the administrator did not want Mrs. Hunter to be away from work. Mrs. Hunter explained that she is a working supervisor and includes herself in the hospital schedule with her staff. The trial court did not accept this as a basis to excuse Mrs. Hunter from jury service.

Plaintiffs exercised a peremptory challenge on Mrs. Hunter and the trial court called a side bar and on its own motion conducted a *Batson* hearing regarding plaintiffs' peremptory challenge. The trial court found that plaintiffs' peremptory challenge of Mrs. Hunter was racially motivated. In response to the trial court's inquiry as to why Mrs. Hunter was excused, plaintiffs cited Mrs. Hunter's affiliation with Rush-Presbyterian Medical Center, where Dr. Bosch, Mrs. Haschke's treating orthopedic surgeon, is employed as an assistant professor. The trial court denied plaintiffs' peremptory challenge of Mrs. Hunter and immediately proceeded with further jury selection. Mrs. Hunter remained as a juror for the entire trial. The jury returned a verdict for defendant. Plaintiffs appeal, claiming that they were improperly denied their peremptory challenge of Mrs. Hunter, and that even if the court did properly find that plaintiffs' peremptory challenge of Mrs. Hunter was racially motivated, the court erred in failing to grant a mistrial.

Plaintiffs first claim that the trial court erred when it determined that plaintiffs sought to exclude Mrs. Hunter from the jury solely on the basis of her race in violation of *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct 1712. To assert a *Batson* claim, a

defendant must first establish a *prima facie* case of purposeful discrimination based upon the race of the excluded veniremember. (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723; *People v. Jackson* (1991), 145 Ill. 2d 43, 582 N.E.2d 125.) Relevant circumstances in determining whether a *prima facie* case of purposeful discrimination has been established include, but are not limited to: (1) a pattern of strikes against black veniremembers; (2) a disproportionate use of strikes against such members; (3) whether the excluded venirepersons were a heterogenous group sharing race as their only common characteristic; (4) the level of black representation in the venire as compared to the jury; (5) prosecutorial questions and statements during *voir dire* and while exercising challenges; and (6) the races of defendants and victims or witnesses. (*People v. Coulter* (1992), 230 Ill. App. 3d 209, 594 N.E.2d 1163.) Once a *prima facie* case has been established, the burden then shifts to the other side to provide race-neutral explanations for striking the particular veniremember. *Batson*, 476 U.S. at 97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723.

Plaintiffs claim that a *prima facie* case of purposeful discrimination was never established in this case, yet the trial court required plaintiffs to provide a race-neutral explanation for their peremptory challenge of Mrs. Hunter. In *Batson* and its progeny it was a party who objected to the other party's use of peremptory challenges. In such a case, the purpose of the *prima facie* requirement is to separate meritless claims of discrimination from those that may have merit. (*United States v. Malindez* (4th Cir. 1992), 962 F.2d 332.) Here, however, the court itself believed that plaintiffs were employing peremptory challenges to exclude jurors because of race. We find nothing improper in a trial court initiating a *Batson* hearing when it believes there have been discriminatory challenges. In order to maintain the integrity of our judicial process, the trial court has a duty to halt what it believes to be racial discrimination in jury selection. See *People v. Andrews* (1988), 172 Ill. App. 3d 394, 526 N.E.2d 628, *aff'd in part & rev'd in part on other grounds* (1989), 132 Ill. 2d 451, 548 N.E.2d 1025.

Regardless of whether a *prima facie* showing had been made, once plaintiffs offered a race-neutral explanation for the peremptory challenge, and the trial court ruled on the ultimate question of intentional discrimination, the preliminary question of whether defendant made out a *prima facie* case became moot. *Hernandez v. New York* (1991), 500 U.S. 352, 114 L. Ed. 2d 395, 111 S. Ct. 1859.

■ Furthermore, based on this record, we cannot say that the trial court acted improperly when it found that plaintiffs challenged Mrs. Hunter on the basis of race. The plaintiffs in this case are white.

Mrs. Hunter is black and she was the second black female stricken by plaintiffs. The record does not disclose the racial makeup of the jurors who had already been accepted, the racial makeup of the jurors who had been called to the jury box and were awaiting *voir dire,* or the racial makeup of the entire venire. The trial court was in the position to make these observations and based on what it saw, concluded that plaintiffs' challenge to Mrs. Hunter was suspect. Because the trial court was able to take into account factors which on the record presented are not before us, we certainly cannot say that the trial court's decision to hold a *Batson* hearing was improper.

■ Plaintiffs claim that they sought to exclude Mrs. Hunter not because she is black, but because she is a supervisor of clerical help in the emergency room at Rush-Presbyterian Medical Center and Mrs. Haschke's treating orthopedic surgeon was employed as an assistant professor at the same hospital. However, there is absolutely no indication in the record that Mrs. Hunter was acquainted with the surgeon or that, if she was acquainted with him, such an acquaintance would be to plaintiffs' detriment. Rather, because Mrs. Hunter worked at the same hospital as Mrs. Haschke's treating physician, the jurors may have placed more weight on that physician's testimony. (See *People v. Coulter* (1992), 230 Ill. App. 3d 209, 594 N.E.2d 1163 (State's assertion that a venireperson might give more credibility to a treating physician called by the defense because the physician had worked at the same hospital as the venireperson's mother was not pretextual).) In fact, the court read to the entire venire the list of possible witnesses, including Dr. Bosch, and asked whether the venirepersons knew any of the witnesses. Mrs. Hunter made no comment. Furthermore, plaintiffs' counsel never even asked Mrs. Hunter whether her employment at Rush might affect her ability to fulfill her duties as a juror. Therefore, we find that the trial court did not abuse its discretion in rejecting plaintiffs' explanation for challenging Mrs. Hunter.

Plaintiffs next allege that the trial court erred in failing to declare a mistrial after its finding of purposeful racial discrimination in jury selection. Plaintiffs, however, did not ask the trial court for this remedy. Plaintiffs cite *People v. Valentine* (1991), 221 Ill. App. 3d 1082, 582 N.E.2d 1338, in support of their contention that a mistrial is the proper remedy where there is a finding of purposeful discrimination. In *Valentine,* however, the court held that no racial discrimination had occurred. Therefore, any discussion by the court of an appropriate remedy where discrimination does occur was *obiter dicta.*

■ When the Supreme Court decided *Batson,* it decided to leave it

to the trial court to determine the appropriate remedy when a finding of purposeful discrimination is made. The *Batson* court stated that "we express no view on whether it is more appropriate in a particular case, upon a finding of discrimination against black jurors, for the trial court to discharge the venire and select a new jury from a panel not previously associated with the case, [citation] or to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire." (*Batson*, 476 U.S. at 99 n.24, 90 L. Ed. 2d at 90 n.24, 106 S. Ct. at 1725 n.24.) Furthermore, it is well recognized in Illinois that the decision to declare a mistrial rests within the sound discretion of the trial court, based on the particular circumstances of the case. (*Tuttle v. Fruehauf Division of Fruehoff Corp.* (1984), 122 Ill. App. 3d 835, 462 N.E.2d 645.) We do not believe that the trial court here abused its discretion in proceeding with jury selection rather than granting a mistrial on its own motion.

Accordingly, for the reasons set forth above, the judgment of the trial court is affirmed.

Affirmed.

COUSINS, P.J., and GORDON, J., concur.