683 A.2d 520

Anzelo JONES a/k/a Angelo Jones

v.

STATE of Maryland.

No. 111, Sept. Term, 1995.

Court of Appeals of Maryland.

Oct. 10, 1996.

Shannon E. Avery, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioner.

Gary E. Bair, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for Respondent.

Argued before MURPHY,* C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

BELL, Judge.

## I.

This case presents an issue left unresolved in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In that case, Justice Powell, writing for the Supreme Court, commented:

> [W]e express no view on whether it is more appropriate in a particular case, upon a finding of discrimination against black jurors, for the trial court to discharge the venire and select a new jury from a panel not previously associated with the case, (citation omitted) or to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire. (citations omitted).

*Id.* at 99–100 n. 24, 106 S.Ct. at 1725 n. 24, 90 L.Ed.2d at 90 n. 24. This Court also has addressed the issue without directly determining the appropriate remedy for a *Batson* violation. *See Stanley v. State*, 313 Md. 50, 62–63 n. 8, 542 A.2d 1267, 1273 n. 8 (1988). *See also Gilchrist v. State*, 340 Md. 606, 644–45, 667 A.2d 876, 895 (1995) (Chasanow, J., concurring). The Court of Special Appeals held that determining the proper remedy for a *Batson* violation is a matter addressed to the sound discretion of the trial court. *Anzelo Jones a/k/a Angelo Jones v. State*, 105 Md.App. 257, 659 A.2d 361 (1995). We agree.

---

* Murphy, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of this opinion.

## II.

The petitioner, Anzelo Jones, charged with various drug related offenses, was tried by a jury in the Circuit Court for Baltimore City. During jury selection, after the *venire* had been questioned on its *voir dire*, resulting in the disqualification of several *venirepersons*, the trial judge addressed the panel that remained, as follows:

> Members of the jury, we go now to that part where those of you who will actually serve on this case are selected. In this case, as is true in every case like this one, the State has five, and the Defendant ten peremptory challenges ... What this means is that up to those numbers the parties may excuse you from serving in this case without explaining to anyone why they have done so. To provide the parties with the opportunity to exercise this right which the law gives them, what we are going to do is ask that you please come forward in smaller groups, ... and when the clerk calls out your number if you would please step forward two or three steps so the parties can see you and then from one to the other the clerk will ask is this juror acceptable to the State, acceptable to the Defendant. If both say yes, that individual is seated in the jury box. If either says no, that person is excused. If you are excused, please return immediately to the jury assembly room.

The jury selection process then continued in open court. After the defense used three consecutive peremptory challenges to strike white *venirepersons*, the prosecution requested a bench conference. While it did not make a formal *Batson* challenge at that time, the prosecution informed the court at that conference, that it wanted simply "to alert the Court to the State's preliminary impression of what defense counsel is doing." Thus, focusing on how the petitioner used his first three peremptory challenges, it observed, for the record, that the petitioner had struck three white *venirepersons*, "none of whom gave excuses or reasons why they should be struck and each one was replaced with an individual of African/American descent."

Jury selection resumed and the petitioner exercised its next peremptory challenge to strike another white *venireperson* from the panel. This time, the prosecution lodged a formal *Batson* challenge, in support of which it pointed to the fact that each of the petitioner's peremptory strikes to that point was of white *venirepersons*. Having required the petitioner to respond to the prosecution's allegations, and after considering that response, the trial court found that the petitioner's exercise of his peremptory challenges was constitutional.[1] Jury selection resumed once again.

The State interposed another *Batson* objection when the petitioner exercised his fifth peremptory challenge to remove yet another white *venireperson*. The objection was not adjudicated, however, until after the jury had been impanelled and the alternate jurors selected. At that time, the trial court permitted the petitioner to provide, at the bench, race-neutral explanations for the exercise of the contested peremptory challenges.[2] Rejecting the explanations given as "pure, simple subterfuge," the court explained:

---

1. In *Gilchrist v. State*, 340 Md. 606, 625–26, 667 A.2d 876, 885–86 (1995), this Court once again stated the three step process, first articulated in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to be used by trial courts to determine whether the exercise of peremptory strikes is discriminatory, *vel non*. First, the trial court must determine whether the complaining party has made a *prima facie* showing of discriminatory exercise of peremptory challenges. *Gilchrist*, 340 Md. at 625, 667 A.2d at 885 (citing *Mejia v. State*, 328 Md. 522, 533, 616 A.2d 356, 361 (1992)). Once the trial court has determined that the peremptory challenges have been exercised in a discriminatory manner, the exercising party must rebut the *prima facie* case by offering race-neutral explanations for challenging the excluded jurors. *Gilchrist*, 340 Md. at 625, 667 A.2d at 885 (citing *Stanley v. State*, 313 Md. 50, 78, 542 A.2d 1267, 1280 (1988)). The third and final step requires the trial court to "determine whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Gilchrist*, 340 Md. at 626, 667 A.2d at 885–86 (quoting *Purkett v. Elem*, —— U.S. ——, ——, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834, 839 (1995)).

2. The petitioner subsequently requested, and received, permission to restate the bases for his exercise of his peremptory challenges. He therefore placed on the record that each person against whom he had exercised a peremptory strike was in a different age bracket, or was

If I were to permit—I was stretching it before and in spite of the warning and the closeness of it—if I were to permit this to go on, we would totally undercut the *Batson* law as the Supreme Court of the United States—

With respect to the remedy for the *Batson* violation, it ruled:

We are not going to strike the entire prospective jury. We are going to ... [W]e will reseat the juror you struck.

\* \* \* \* \* \*

Each one of your challenges is invalidated. We will roll the clock back to where we were and we will re-seat every one that you invalidly struck.

Consistent with its intent to "roll the clock back to where we were," the trial court recalled *not only* the five white prospective jurors, whom it had determined had been improperly stricken in violation of *Batson,* but also the two black *venirepersons* stricken, albeit properly, the court ruled, by the prosecution.[3] The trial court explained the procedure it would follow to achieve the desired result:

What we are going to do when ... all seven of those who have been struck have returned to the courtroom is we are

---

engaged in a profession or resided in a particular type of neighborhood, such that that person would be unable to relate to him or the experiences he had had. The court remained unimpressed:

After reviewing the characteristics of the African–American members of the jury, and other members of the jury who have passed muster in this Defendant's eye, I do not find the explanations given to be justified and I again find it's a subterfuge and that the real reason those persons were struck was solely because of their race and, therefore, we will reseat, we will reseat all of them and we will proceed from there.

**3.** The petitioner mounted a *Batson* challenge against the prosecution's use of the two peremptory challenges exercised to remove black *venirepersons.* The court found that the prosecution's explanations for their exercise were race-neutral. It also concluded, based on the composition of the jury which, prior to the reseating of the stricken jurors, contained eleven black members and one white member, that there was no evidence of a pattern of discriminatory use by the State of its peremptory challenges to remove black *venirepersons.*

going to reconstitute the jury precisely as it was before either party exercised a [peremptory] challenge.

\*       \*       \*       \*       \*       \*

We will review the panel and the parties will have their strikes to exercise. I have invalidated each one of the strikes that the Defendant has exercised on grounds that they were unconstitutionally exercised, and, therefore I will not permit the exercise of the restored challenges to any of those five the Defendant has previously stricken.

When the stricken jurors had returned to the courtroom, the trial court advised the *venire* as follows:

Members of the panel, *I have invalidated the [peremptory] challenges which have been previously exercised and what we are going to do is re-seat the twelve jurors in the jury box but replacing three of the twelve jurors who were originally seated and were subsequently stricken.* Of the jurors currently seated in seats number 4, 5 and 6, if you would please leave the jury box and return, just return to the audience, the spectator section. Then Juror Number 4 will be you, Juror Number 9....

Juror Number 5, Juror Number 10 ... if you would, resume the number 5 seat.

Finally, Juror Number 6 will be Juror Number 16.... If you would, resume your seat. (Emphasis added)

As so constituted, the jury was declared by both parties to be acceptable.[4] Thereafter, the petitioner was tried, convicted, and sentenced to a 14 year prison sentence.

The convictions were affirmed by the Court of Special Appeals. That court rejected the petitioner's claim that the

---

4. Immediately after declaring the jury acceptable, the petitioner approached the bench and advised the court as follows:

Your Honor, I said acceptable for the record in front of the jury because I will not say unacceptable before a jury panel, but the jury is unacceptable to the defense, but we will not exercise any further strikes. We object to the Court re-seating the jurors unacceptable but we are ready to proceed.

The State does not contend that this issue has been waived.

trial court erred in reseating the jurors found to have been improperly stricken, rather than striking the entire panel and beginning jury selection anew. It held that reseating those jurors was not an abuse of the trial court's discretion and, so, did not constitute error.[5]

The petitioner filed a petition for the issuance of the writ of certiorari, which we granted, to decide whether a trial court, which determines that peremptory challenges have been exercised in violation of *Batson*, should discharge the *venire* and select the jury from a new *venire* or reseat the jurors who were stricken improperly?

## III.

Recognizing that it is within the trial court's discretion to fashion a remedy for a *Batson* violation, the petitioner asserts that, in this case, instead of reseating improperly stricken jurors, the trial court should have dismissed the entire *venire* and convened a new one from which to select the jury. He further maintains that, because they were biased against him for having attempted to remove them from the *venire*, reseating the jurors significantly prejudiced him, in violation of his 5th amendment right to trial by a fair and impartial jury. Thus, the petitioner argues that, under the facts of this case, the more appropriate, indeed, the only, remedy, was the dismissal of the *venire* and beginning jury selection anew. The failure to do so, he submits, constitutes an abuse of discretion, warranting reversal of the circuit court's judgment.

The State, on the other hand, urges the adoption of a different *per se* rule. Under the rule it advocates, trial courts, upon determining that a party has exercised peremptory challenges in an unconstitutional manner, would be required, as the sole remedy for the *Batson* violation, to reseat those jurors who were improperly stricken. In the alternative,

---

5. Because no further peremptory challenges were exercised after the jury was reconstituted as it was before any strikes were made, only three of the improperly stricken jurors actually sat on the petitioner's jury.

recognizing that this Court could determine that it is within the trial court's discretion to fashion a remedy for a *Batson* violation, it argues that the trial court did not err; reseating improperly stricken jurors was, in this case, a proper exercise of its discretion. To hold otherwise, it contends, rewards the petitioner because by unconstitutionally exercising peremptory challenges, he will have obtained the result he sought, namely a *venire* which does not include the jurors he struck. Moreover, the State asserts, such a result would violate the equal protection rights of the stricken jurors not to be excluded from jury service for a racially discriminatory reason.

## IV.

### A.

This appeal is not concerned with when, and if, a party has committed a *Batson* violation. We have previously addressed those issues, most recently in *Harley v. State,* 341 Md. 395, 671 A.2d 15 (1996), largely resolving them. *See Gilchrist,* 340 Md. at 625–26, 667 A.2d at 885–86, and Chasanow, J., concurring, 340 Md. at 645–647, 667 A.2d at 895–896. The issue, rather, concerns the consequences and effect of such a violation on the jury selection process. They can not be determined without first assessing the impact of a *Batson* violation on the various participants in that process.

*Batson* was designed to "serve multiple ends." *Powers v. Ohio,* 499 U.S. 400, 406, 111 S.Ct. 1364, 1368, 113 L.Ed.2d 411, 422 (1991). *See also Allen v. Hardy,* 478 U.S. 255, 259, 106 S.Ct. 2878, 2880, 92 L.Ed.2d 199, 205 (1986). The *Batson* court identified the harm resulting from the unconstitutional exercise of peremptory challenges as it relates to the defendant, the prospective jurors, and the "entire community." 476 U.S. at 86–87, 106 S.Ct. at 1717–18, 90 L.Ed.2d at 80–81. With regard to the defendant, the Court pointed out that "[p]urposeful discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Id.* at 86, 106 S.Ct. at 1717, 90 L.Ed.2d at 80. It reached a similar

conclusion as to a juror who is discriminatorily excluded because of race: "by denying a person participation in jury service on account of his race, the [party exercising the strike] unconstitutionally discriminate[s] against the excluded juror." *Id.* at 87, 106 S.Ct. at 1718, 90 L.Ed.2d at 81 (citing *Strauder v. West Virginia,* 100 U.S. 303, 308, 25 L.Ed. 664, 666 (1880)). It concluded:

> The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice.

*Id.* (Citations omitted).

While the Court's primary focus was on the constitutional rights of the defendant, the Supreme Court nevertheless acknowledged for the first time that the jurors too had a stake in the process, a right to a non-discriminatory method of jury selection; they are entitled to serve on a jury, and thus to be free from the discriminatory exercise of peremptory challenges. Subsequent cases have confirmed the existence and significance of jurors' equal protection rights. *J.E.B. v. Alabama ex. rel. T.B.,* 511 U.S. 127, ——, 114 S.Ct. 1419, 1421, 128 L.Ed.2d 89, 97 (1994) ("We have recognized that whether the trial is criminal or civil, potential jurors, as well as litigants, have an equal protection right to jury selection procedures that are free from state-sponsored group stereotypes rooted in, and reflective of, historical prejudice."); *Georgia v. McCollum,* 505 U.S. 42, 48–50, 112 S.Ct. 2348, 2353–54, 120 L.Ed.2d 33, 44–46 (1992) (noting that an individual juror's right to equal protection is as much infringed when it is the defendant who exercises the strike based on race as when it is the prosecutor); *Powers v. Ohio,* 499 U.S. 400, 406–09, 111 S.Ct. 1364, 1368–69, 113 L.Ed.2d 411, 422–24 (1991) (applying the principle to the prosecutor); *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 619, 111 S.Ct. 2077, 2082, 114 L.Ed.2d 660, 672 (1991) (civil trial).

"The error at issue in a *Batson* challenge is, of course, the ... racially discriminatory use of peremptory strikes in viola-

tion of both the accused's and the excluded *venirepersons'* equal protection rights." *State v. Parker,* 836 S.W.2d 930, 936 (Mo.1992) *cert. denied Missouri v. Parker,* 506 U.S. 1014, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992) (citing *Powers,* 499 U.S. at 406–08, 111 S.Ct. at 1368–69, 113 L.Ed.2d at 422–24). The appropriate remedy must take account of and, to the extent possible, vindicate each.

Deciding what action should be taken by a trial court to remedy a *Batson* violation is a matter of first impression in Maryland, although the issue itself has long been anticipated. In *Stanley v. State,* 313 Md. at 62–63 n. 8, 542 A.2d at 1273 n. 8, as earlier stated, we recognized and noted the issue, observing, "[w]hich remedy to apply may well be within the discretion of the trial court, depending on the circumstances of the particular case." The case at bar requires us now definitively to decide whether, indeed, the determination of a remedy for a *Batson* violation is a decision vested in the discretion of the trial court or is one for which there ought to be a *per se* rule.

### B.

As we have seen, the Supreme Court in *Batson, supra,* left it to the state and federal trial courts to determine whether, in a particular case, a *Batson* violation is more appropriately remedied by the discharge of the entire *venire* and beginning jury selection anew with a new *venire* or by the reseating of the improperly stricken juror. Some jurisdictions require trial courts finding a *Batson* violation to disallow the strike or to re-seat the improperly stricken juror. *See Ellerbee v. State,* 215 Ga.App. 312, 450 S.E.2d 443, 448 (1994); *State v. Grim,* 854 S.W.2d 403, 416 (Mo.1993) *cert. denied, Grim v. Missouri,* 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993) ("[T]he proper remedy for discriminatory use of peremptory strikes is to quash the strikes and permit those members of the *venire* stricken for discriminatory reasons to sit on the jury if they otherwise would."); *Conerly v. State,* 544 So.2d 1370, 1372 (Miss.1989) ("Having determined that the state's explanation

did not provide a valid reason for striking Swain, the trial court was obligated to seat her on the jury unless the state could suggest another racially neutral reason for striking her."); *U.S. v. Robinson,* 421 F.Supp. 467, 474 (D.Conn.1976), *aff'd* 556 F.2d 562 (2nd Cir.1977).

A minority of jurisdictions requires the trial court to discharge the entire *venire* and conduct jury selection from a newly convened *venire. See State v. McCollum,* 334 N.C. 208, 433 S.E.2d 144, 159 (1993) *cert. denied, McCollum v. North Carolina,* —— U.S. ——, 114 S.Ct. 2784, 129 L.Ed.2d 895 (1994) (the court noted that while neither reseating the stricken juror nor discharging the entire panel was inconsistent with the procedure required by *Batson* to remedy such a violation, "the simpler and ... clearly fairer approach is to begin the jury selection anew...."); *People v. Wheeler,* 22 Cal.3d 258, 148 Cal.Rptr. 890, 907, 583 P.2d 748, 765 (1978). *See Minniefield v. State,* 539 N.E.2d 464 (Ind.1989) (holding that the trial court erred by failing to grant mistrial as result of prosecution's *Batson* violation).

The majority of courts, however, have delegated to the discretion of the trial judge the determination of the appropriate remedy for a *Batson* violation. *See e.g. State v. Franklin,* 456 S.E.2d 357, 360 (S.C.1995) *cert. denied, Franklin v. South Carolina,* —— U.S. ——, 116 S.Ct. 160, 133 L.Ed.2d 103 (1995) ("We hold ...'that it is within the trial judge's discretion to fashion the appropriate remedy under the particular facts of each case".... (citation omitted)); *Ezell v. State,* 909 P.2d 68, 72 (Okla.Crim.App.1995) ("We adopt this flexible approach as the best solution. We interpret *Batson* as suggesting that either remedy may be appropriate depending on the particular circumstances at trial"). *Commonwealth v. Fruchtman,* 418 Mass. 8, 633 N.E.2d 369, 373 (1994), *cert. denied, Fruchtman v. Massachusetts,* —— U.S. ——, 115 S.Ct. 366, 130 L.Ed.2d 319 (1994) ("Choice of remedy was ... the prerogative of the judge"); *Haschke v. Uniflow Manufacturing Co.,* 268 Ill. App.3d 1045, 206 Ill.Dec. 387, 391, 645 N.E.2d 392, 396 (1994);

*Friedman v. State,* 654 So.2d 50, 52 (Ala.Crim.App.1994), *cert. denied,* No. 1940189 (Ala.1995); *Koo v. State,* 640 N.E.2d 95, 100 (Ind.Ct.App.1994) ("Clearly, the remedy which a particular trial court employs upon a finding of purposeful discrimination is a matter left to the court's discretion."); *State ex rel. Curry v. Bowman,* 885 S.W.2d 421, 425 (Tex.Crim.App.1993), *cert. denied, Texas v. Bowman,* —— U.S. ——, 115 S.Ct. 184, 130 L.Ed.2d 118 (1994) ("[W]here a *Batson* claim is sustained the court may fashion a remedy in its discretion....") [6]; *Jefferson v. State,* 595 So.2d 38, 41 (Fla.1992) ("[I]t is within the trial judge's discretion to fashion the appropriate remedy under the particular facts of each case....") [7]; *People v. Irizarry,* 165 A.D.2d 715, 560 N.Y.S.2d 279, 281 (1990); *State v. Walker,* 154 Wis.2d 158, 453 N.W.2d 127, 135 n. 12 (1990) *cert. denied* 498 U.S. 962, 111 S.Ct. 397, 112 L.Ed.2d 406 (1990); *U.S. v. Forbes,* 816 F.2d 1006, 1011 (5th Cir.1987).

---

**6.** Texas has a statute, Tex.Code Crim. Proc. Ann. art. 35.261 (West 1989), that, by its express terms, requires the dismissal of the entire *venire* and the calling of a new array whenever the court finds a *Batson* violation. It has been interpreted by the Texas Court of Criminal Appeals and Court of Appeals, however, to permit, in a given case, a trial court to reseat a wrongfully excluded juror. *State v. Bowman,* 885 S.W.2d 421, 424–25 (Tex.Crim.App.1993), *cert. denied, Texas v. Bowman,* —— U.S. ——, 115 S.Ct. 184, 130 L.Ed.2d 118 (1994); *Sims v. State,* 768 S.W.2d 863, 864 (Tex.Ct.App.1989), *pet. dismissed,* 792 S.W.2d 81 (Tex.Crim.App.1990) (statute "does not require in all cases that a new array be called, but that the trial judge has the discretion to apply either remedy."). *See* also *Butler v. State,* 872 S.W.2d 227, 233 (Tex.Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1115, 130 L.Ed.2d 1079 (1995). *But see State ex rel. Skeen v. Tunnell,* 768 S.W.2d 765, 767 (Tex.Ct.App.1989) (finding statute constitutional and its provisions mandatory, rather than directory).

**7.** It was earlier thought that Florida adhered to the view that a finding of purposeful discrimination required dismissal of the entire *venire* and starting the selection proceedings anew with a new *venire. See State v. Neil,* 457 So.2d 481 (Fla.1984). In *Jefferson v. State,* 595 So.2d 38, 40 (Fla.1992), however, the court explained its *Neil* decision:

[T]his Court tailored the remedy in *Neil* to the particular facts of that case. Because the trial court had already dismissed the improperly excluded jurors, the alternative remedy of denying the peremptory challenges was not available. We did not intend for *Neil* to set forth the exclusive remedy for discriminatory peremptory challenges. (Footnote omitted).

## C.

Reseating improperly stricken jurors or disallowing strikes based on race may impact on a litigant's right to a fair trial by an impartial jury. Those courts which require trial courts to discharge the *venire* whenever a *Batson* violation has been found, do so to protect the defendant's right to a fair trial by an impartial jury. Those jurisdictions adhere to a *per se* rule of discharging the entire *venire* panel and beginning jury selection anew, thus eliminating this potential for prejudice and preserving the defendant's rights in every instance. Their purpose is to insulate him or her absolutely from any prejudice which may accrue from the unconstitutional exercise of peremptory challenges. *McCollum*, 433 S.E.2d at 159. They recognize that "[t]here is the lurking danger . . . that an unsuccessfully challenged juror may now bear an animus against the challenger arising from the challenge itself." *Chew v. State*, 71 Md.App. 681, 704, 527 A.2d 332, 344 (1987), *aff'd* 317 Md. 233, 236, 562 A.2d 1270, 1271 (1989). *See Powers*, 499 U.S. at 410, 111 S.Ct. at 1370, 113 L.Ed.2d at 424 ("It is suggested that no particular stigma or dishonor results if a prosecutor uses the raw fact of skin color to determine the objectivity or qualifications of a juror. We do not believe a victim of the classification would endorse this view; the assumption that no stigma attaches contravenes accepted equal protection principles."); *Jefferson*, 595 So.2d at 39 (no danger of prejudice when the inquiry is conducted outside the *venire*'s presence); *McCollum*, 433 S.E.2d at 159 ("To ask jurors who have been improperly excluded from a jury because of their race to then return to the jury to remain unaffected by that recent discrimination, and to render an impartial verdict without prejudice toward either the State or the defendant would be to ask them to discharge a duty which would require near superhuman effort and which would be extremely difficult for a person possessed of any sensitivity whatsoever to carry out successfully."); *Walker*, 453 N.W.2d at 135 n. 12. ("One factor the trial court should consider in selecting the appropriate remedy is whether the challenged juror is aware of the fact that he or she was challenged by the prosecutor. If the challenged juror is aware of the fact that he or she was

challenged by the prosecutor, then that juror should not be reinstated because there is a substantial likelihood that he or she will have developed a bias against the prosecutor.").[8]

The more improperly stricken jurors are reseated the more likely it is that the resulting jury will not be impartial, assuming, of course, that they know that their removal was prompted by an improper exercise of a peremptory challenge. As the Court observed in *Ezell,* 909 P.2d at 72:

> If a *Batson/McCollum* claim is raised at the time a juror is challenged, it may be feasible to reinstate the juror. Sometimes several jurors must be challenged for a pattern to emerge. If the parties have waited until several challenges have been exercised to make their record, the trial court may need to quash and reseat the entire panel, prohibiting each party from again attempting to strike jurors for whom

---

**8.** This is also a concern of the American Bar Association. Standard 15–2.7(a) of the *ABA Standards for Criminal Justice, Discovery & Trial by Jury* 3rd ed. 1996, provides:

(a) All challenges, whether for cause or peremptory, should be addressed to the court outside of the presence of the jury, in a manner so that the jury panel is not aware of the nature of the challenge, the party making the challenge, or the basis of the court's ruling on the challenge.

In the commentary to that Standard, it is said:

This standard sets out the principles governing the exercise of challenges to jurors during the jury selection process. It establishes an appropriate procedure to exercise challenges, one where the jurors do not know which attorney exercised the challenge and where the grounds for the challenge are not stated in open court. When a juror is challenged, either for cause or peremptorily, the comments of counsel may offend a challenged juror. Should the challenge be denied, the very fact that the juror heard such remarks from counsel might tend to bias the jury against that attorney and the attorney's client.

To avoid the prejudicial effect of exercising challenges in open court, this standard provides that challenges are to be presented at the bench, at side-bar. In addition, where a judicial inquiry is made under Standard 15–2.8, the jurors will not be aware of the basis for the challenge and, if the challenge is deemed to be racially motivated, the challenged juror who remains on the panel will not be aware that he or she was challenged, of the alleged basis for the challenge, or of the ruling that the challenge was racially motivated. The side-bar challenge shields the jury from these procedures.

no race or gender-neutral reason was provided in the first instance.

*See also Chew,* 71 Md.App. at 704, 527 A.2d at 343–44. ("If a half dozen or more prospective jurors have been unconstitutionally challenged, it may be necessary to dismiss the entire *venire* and to begin again with a new panel.").

While cognizant that individual prospective jurors have an equal protection right not to be excluded from jury service because of race, the courts that incline to this view "conclude that the primary focus in a criminal case . . . must continue to be upon the goal of achieving a trial which is fair to both the defendant and the State." *McCollum,* 433 S.E.2d at 159. Consequently, their decisions are subject to the criticism that they do not adequately value the prospective jurors' rights. Some courts reason, "[q]uashing the panel and commencing the jury selection process anew does not really correct the error. The defendant is simply accorded a new opportunity to obtain a jury composed according to race-neutral criterion; the discrimination endured by the excluded *venirepersons* goes completely unredressed since they remain wrongfully excluded from jury service." *Parker,* 836 S.W.2d at 936. *See also Jefferson,* 595 So.2d at 40. ("While striking the *venire* and beginning selection over with a new jury pool may protect the constitutional rights of the defendant, it does nothing to remedy the recognized discrimination against those improperly removed from the jury."); *Christensen v. State,* 875 S.W.2d 576, 579 (Mo.Ct.App.1994) ("[T]he purpose of a *Batson* challenge is not to replace an entire panel, which would effectively deny the wrongly struck jurors their opportunity to serve, but to quash only the prejudice or wrongful strike."); *Bowman,* 885 S.W.2d at 425. ("If the only remedy is dismissal of the array, the affected *veniremember* is still not allowed to participate in the process.") [9].

---

**9.** This is not the only criticism of this *per se* approach. Albert W. Alschuler has observed:

> [I]n some situations, the remedy [of discharging the entire panel] might give the prosecutor [or defense] a broader de facto peremptory

## D.

On the other extreme are those jurisdictions which have adopted a *per se* rule requiring the reseating of improperly stricken jurors whenever a *Batson* violation has been found. Cases from these jurisdictions emphasize that the individual prospective jurors have a right not to be excluded from jury service for a racially discriminatory reason. *Ellerbee*, 450 S.E.2d at 448; *Grim*, 854 S.W.2d at 416; *Conerly*, 544 So.2d at 1372; *Robinson*, 421 F.Supp. at 474. The cases justify this approach on two grounds: the ineffectiveness of quashing the entire *venire* to correct the *Batson* violation and judicial economy. *Parker*, 836 S.W.2d at 936. They point out that permitting the parties to select from a new *venire* in no way removes the discrimination to which the excluded jurors will have been subjected. *Id.; Jefferson*, 595 So.2d at 41; *Bowman*, 885 S.W.2d at 425. Judicial resources are conserved, they reason, by not having to go through the time and expense of selecting an entirely new *venire*. *Parker*, 836 S.W.2d at 936.

---

challenge than any provided by law. A prosecutor or [defense attorney] dissatisfied with an initial panel of prospective jurors—perhaps because this panel contained an unusual number of minorities—might *seek to reduce the presence of minorities through the exercise of peremptory strikes.* Were these strikes upheld, the prosecutor [or defense attorney] would gain a victory; and were they declared unlawful and the jury selection process begun anew, the prosecutor might regard this defeat as a great victory still.

The prosecutor [or defense attorney] would have gained not only the exclusion of the prospective jurors whom he or she wrongfully challenged but also the exclusion of all other members of the panel. The prosecutor [or defense attorney] would in effect have been afforded a power to strike the entire panel peremptorily.

*The Supreme Court and the Jury: Voir Dire, Peremptory Challenges, and the Review of Jury Verdicts*, 56 U.Chi.L.Rev. 153, 178 (1989). *See also State v. Franklin*, 456 S.E.2d 357, 360 (S.C.1995) *cert. denied Franklin v. South Carolina*, —— U.S. ——, 116 S.Ct. 160, 133 L.Ed.2d 103 (1995) (quoting *People v. Moten*, 159 Misc.2d 269, 603 N.Y.S.2d 940, 947 (1993)) ("To [always require dismissal of the entire *venire*] would inadvisably reward a party for his own improper conduct ... it would reward him for the very discrimination which *Batson* ... [was] designed to prevent.").

■ On the other hand, while jurors have a right not to be excluded from jury service improperly, "an individual juror does not have a right to sit on any particular petit jury...." *Powers*, 499 U.S. at 409, 111 S.Ct. at 1370, 113 L.Ed.2d at 424. (White, J., concurring); *Holland v. Illinois*, 493 U.S. 474, 488, 110 S.Ct. 803, 811, 107 L.Ed.2d 905, 921 (1990); *McCollum*, 505 U.S. at 48, 112 S.Ct. at 2353, 120 L.Ed.2d at 44. By reseating improperly stricken jurors in every instance, these cases accord the individual prospective jurors more rights than they deserve; not only are their right against discriminatory exclusion protected, but, without regard for the prejudice which may accrue as a result, jurors may be guaranteed a seat on the jury panel.

## E.

To be sure, each extreme addresses a legitimate concern. Reseating an improperly stricken juror and/or disallowing an unconstitutional strike vindicates the individual prospective juror's right to equal protection. Similarly, striking the entire *venire* and starting the process afresh protects the right of the defendant and other litigants to trial by an impartial jury. But the goal must be to achieve the proper balance, to vindicate and effectuate each of the competing rights. Thus, the juror's right not to be excluded from jury service in a manner violative of his or her equal protection rights must be balanced against the potential prejudice to the litigant, in this case, the defendant, as the striking party, that reseating the improperly stricken juror or disallowing the strike may entail. *Powers*, 499 U.S. at 410, 111 S.Ct. at 1370, 113 L.Ed.2d at 425; *Jefferson*, 595 So.2d at 39; *Friedman*, 654 So.2d at 53.

*Jefferson* is illustrative. In that case, the issue was the propriety of the trial court's decision disallowing the prosecution's challenge to a prospective juror. Noting that the trial court had determined that the prosecution was attempting to exercise a peremptory challenge in violation of *Batson*, the court stressed that "it is within the trial judge's discretion to fashion the appropriate remedy under the particular facts of each case." Concluding that "the remedy selected by the trial

judge simultaneously assured that neither Jefferson's nor the potential juror's constitutional rights were violated," *id.,* 595 So.2d at 41, it emphasized that the *Batson* inquiry "was conducted outside the presence of the potential jurors and without their knowledge as to the nature of the proceedings." *Id.* at 39. The court added:

> [A]bsent injury to a party's constitutional right to an impartial jury, it is within the trial court's discretion to seat the improperly challenged juror in order to remedy a discriminatory peremptory challenge.

*Id.; See also Koo,* 640 N.E.2d at 100 (finding no abuse of discretion where, after a *Batson* challenge was made by the prosecution to the defendant's use of four peremptory challenges to strike females from the *venire,* the trial court disallowed two additional strikes that would have removed two more females).

Although the Supreme Court in *Batson* declined to fashion a remedy for a *Batson* violation, it did suggest that the facts and circumstances of a particular case are important considerations in making that determination. *Batson,* 476 U.S. at 99–100 n. 24, 106 S.Ct. at 1725 n. 24, 90 L.Ed.2d at 90 n. 24. Among the circumstances relevant to determining what remedy is appropriate is the fact that "a criminal defendant [has] the constitutional right to have a jury whose members are selected pursuant to nondiscriminatory criteria ... 'and an individual juror has the right not to be excluded from a jury on account of race'." *Ellerbee,* 450 S.E.2d at 448 (quoting *Lewis v. State,* 262 Ga. 679, 424 S.E.2d 626, 627 (1993)). This need to consider conflicting constitutional rights, as, for example the equal protection rights of the defendant and the excluded juror, *Batson,* 476 U.S. at 86–87, 106 S.Ct. at 1718, 90 L.Ed.2d at 81, militates in favor of permitting the trial court to tailor the remedy so as to protect the rights of all the parties concerned. We are persuaded that this approach is sound. Therefore, we hold, consistent with the *Stanley* prediction, the majority of the courts that have considered the issue, and the Court of Special Appeals, that the trial court has the discretion to fashion a remedy for a *Batson* violation

that addresses and resolves the specific harm caused by that violation.

## V.

Turning, to the case at bar, we agree with the intermediate appellate court:

> The guiding factor in this determination [of the appropriate remedy] should be the likelihood of the juror harboring any prejudice to the violating party as a result of being improperly excluded from the panel.  For example, when a *Batson* challenge is made in the jury's presence and the violating party offers his non-discriminatory reason for striking the juror in front of that juror, there is the risk that the juror will bear animosity toward the party who exercised the strike.  When, on the other hand, counsel explains his reasons for striking a particular juror at a bench conference, and the circumstances otherwise do not indicate to the juror that he was struck for improper reasons, the likelihood of prejudice is not present or is minimal.

*Jones*, 105 Md.App. at 274, 659 A.2d at 369.  Here, the *Batson* inquiry was conducted outside the hearing of the jury.  Moreover, there is nothing in the record indicating that the dismissed jurors were aware of the basis for their being excluded, not to mention that it was unconstitutional.[10]  A total of seven prospective jurors were struck peremptorily before the court ruled that those exercised by the petitioner violated *Batson*.  Although that fact was reflected in the remedy chosen—the State would be allowed once again to strike the two black prospective jurors but the petitioner was prohibited from again striking the five white jurors—it never became obvious to the affected individuals or the *venire* since no further jury selection occurred.  And they certainly were not told that the peremptories exercised by the State were proper

---

**10.** As indicated, *see* note 8, *supra*, ABA Standard 15–2.7 suggests that peremptory challenges, like strikes for cause, be addressed completely outside the presence of the jury so that the prospective juror will not know who made the challenge.

and those exercised by the petitioner were not. In fact, the court's explanation to the *venire*, which included the affected individuals, treated all the peremptories the same. As far as the affected individuals knew the court simply "invalidated the peremptory challenges which have been previously exercised."

■ As support for his conclusion that they were not unconstitutionally excluded on the basis of their race, the petitioner points to the fact that none of the stricken jurors expressed any view which would have been a basis for striking them for cause. The mere statement of the conclusion is not enough, however. Unless a party can demonstrate how he or she has been prejudiced, that "party cannot complain that the seating of an improperly challenged juror violates his or her right to an impartial jury." *Jefferson*, 595 So.2d at 41. The petitioner has made no such demonstration.

■ The petitioner submits that knowledge of who attempted to strike them is enough of a basis to infer that the improperly challenged jurors were biased against him; the mere fact of being challenged, in other words, "may create animosity toward the party exercising the peremptory strike." The petitioner's brief at 16. This position finds support in *State v. Walker, supra,* in which the Supreme Court of Wisconsin commented:

> One factor the trial court should consider in selecting the appropriate remedy is whether the challenged juror is aware of the fact that he or she was challenged by the prosecutor. If the challenged juror is aware of the fact that he or she was challenged by the prosecutor, then that juror should not be reinstated because there is a substantial likelihood that he or she will have developed a bias against the prosecutor.

453 N.W.2d at 135. We are not persuaded. As previously pointed out, prejudice, rather than speculation, must be shown. Something more than knowledge of who attempted to exclude the juror is thus required.

There may be, to be sure, circumstances in which the dismissal of the entire *venire* will be the only viable, effective

remedy available. Those instances will occur ordinarily when reseating the improperly stricken juror will impair a party's right to a fair trial by an impartial jury. *Jefferson,* 595 So.2d at 41. ("Under certain circumstances and in the absence of prejudice to one of the parties, proceeding with the improperly challenged juror may be the more appropriate remedy."). In such instances, the court will abuse its discretion if it does not abort the trial and begin jury selection anew with a different panel. That is not the situation here. As there has been shown no such prejudice here and since the rights of the excluded jurors were redressed by the court's determination to reseat them, it follows that there has been no abuse of discretion in this case; it was a proper exercise of the court's discretion to reseat the improperly stricken jurors.

*JUDGMENT AFFIRMED, WITH COSTS.*